YOUNTS v. SOUTHWESTERN TELEGRAPH & TELEPHONE CO.

(Circuit Court, E. D. Arkansas, W. D.   November 18, 1911.)

No. 5,577.

1. REMOVAL OF CAUSES (§ 11*)—SUITS REMOVABLE—ORIGINAL JURISDICTION OF FEDERAL COURT.

Under Act March 3, 1887, c. 373, § 1, 24 Stat. 552, and Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), no cause can be removed into a federal court unless it is one which could originally have been brought in that court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 29–31; Dec. Dig. § 11.*]

2. COURTS (§ 489*)—JURISDICTION OF FEDERAL COURTS—ACTION TO RECOVER PENALTY.

Federal courts have jurisdiction to entertain actions for the recovery of penalties given by state statutes to individuals to compensate them for injuries sustained, but not of actions to recover penalties for the use of the state even if the nominal plaintiff is an individual, nor though a part of the penalty goes to the informer, where when collected it goes into the state treasury.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 489.*]

3. STATUTES (§ 241*)—CONSTRUCTION—PENAL STATUTE.

A statute which authorizes the recovery by an individual injured by its violation of cumulative penalties greatly in excess of the actual damages sustained must be strictly construed, and, unless the plaintiff suing thereon brings himself clearly within the letter of the law, he cannot recover.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323; Dec. Dig. § 241.*]

4. TELEGRAPHS AND TELEPHONES (§ 34*)—"DISCRIMINATION"—WHAT CONSTITUTES.

That a telephone company, which was under no duty to extend its lines outside of the corporate limits of a city, where it maintained an exchange in fact, made such extensions for the accommodation of one or two persons, did not entitle another outside resident to demand the same service, and the refusal of the company to comply with such demand did not constitute an unlawful "discrimination" within the meaning of Kirby's Dig. Ark. 1904, § 7948, which requires such companies to supply all applicants for telephone connection and facilities without discrimination or partiality under penalty of $100 for each day such connection or facilities are withheld.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*

For other definitions, see Words and Phrases, vol. 3, p. 2099.]

Action by W. C. Younts against the Southwestern Telegraph & Telephone Company. On demurrer to complaint. Demurrer sustained.

This suit was instituted in a state court and by the defendant removed to this court upon the ground of diversity of citizenship. The complaint alleges: That the defendant is engaged in operating a telephone exchange in the city of Little Rock and in installing and furnishing telephones in the residences and places of business of the citizens of the city, as well as citizens living and residing in the country, and also of citizens living in the neighborhood of Fourche Dam and in close proximity to the place of business and residence of plaintiff, and in furnishing the citizens thereof with telephone

connections through the central office of the exchange maintained by said defendant so as to give to citizens who are subscribers for telephone instruments connected with said exchange facilities for communicating with all other parties who are subscribers to said telephone. That on the 10th day of May, 1910, plaintiff made application in writing to defendant for a telephone and equipment at his residence at Fourche Dam and to connect the same for his use with the defendant's Little Rock exchange on the terms and conditions required of other subscribers similarly situated. That such application has been time and again repeatedly made, but by the defendant refused. That plaintiff has complied and offered to comply with all reasonable regulations of the defendant, and as an inducement to obtain telephone facilities offered to pay for the necessary wire and poles and the expense of erecting the same.

It is then charged that this refusal was an unlawful discrimination, for the reasons stated in the complaint that the defendant has poles and a line of wires along the Fourche Dam pike to a point on said pike about one-half mile from the residence of plaintiff; that from this point on the pike the defendant has run a line of wires and put up poles a distance of about one-half mile in a northeasterly direction and installed a telephone and telephone connection in the residence and place of business of Fred Hohenschutz, and also in the residence and place of business of Peter Barzen, giving to both of these persons single line or private wire connection; that these installations and connections were made prior to plaintiff's application for a telephone and connection; that it is far easier and less expensive for the defendant to have furnished plaintiff with a telephone and telephone connection than it was to furnish them to the above-named parties; that it was no more trouble or expense for the defendant to run its line of wires and erect posts from the point on the pike at which the line swings over to the premises of the said Hohenschutz and Barzen than it is or was to run its line of poles and wires to the residence of the plaintiff; that this discrimination has continued for more than 385 days: and that by reason thereof he is entitled to recover $100 penalty under the laws of the state of Arkansas for each and every day for the 385 days. He therefore prays judgment for $38,500 penalties.

The defendant demurs to the complaint, setting up various grounds; but at the hearing it relied solely upon the ground that the facts alleged in the complaint are not sufficient to constitute a cause of action. The statute of the state of Arkansas upon which this action is based was enacted March 31, 1885, is digested in Kirby's Digest of the Revised Statutes of Arkansas of 1904 as section 7948, and is as follows:

"Every telephone company doing business in this state and engaged in a general telephone business shall supply all applicants for telephone connection and facilities without discrimination or partiality; provided, such applicants comply or offer to comply with the reasonable regulations of the company, and no such company shall impose any condition or restriction upon any such applicant that are not imposed impartially upon all persons or companies in like situations; nor shall such company discriminate against any individual or company engaged in lawful business, by requiring as condition for furnishing such facilities that they shall not be used in the business of the applicant, or otherwise, under penalty of one hundred dollars for each day such company continues such discrimination, and refuses such facilities after compliance or offer to comply with the reasonable regulations and time to furnish the same has elapsed, to be recovered by the applicant whose application is so neglected or refused."

W. H. Pemberton, for plaintiff.
A. P. Wozencraft and Walter J. Terry, for defendant.

TRIEBER, District Judge (after stating the facts as above). In every action brought in a circuit court of the United States, or removed thereto from a state court, a preliminary question to be determined is whether the court has jurisdiction of the cause. If the

record does not affirmatively show jurisdiction in this court, it is its duty to so declare and decline to proceed further, and this it must do although no objections are raised by either party, or even if the parties consent to the jurisdiction. Minnesota v. Northern Securities Co., 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870, and authorities there cited.

[1] Under the Judiciary Act of August 13, 1888 (chapter 866, 125 Stat. 433 [U. S. Comp. St. 1901, p. 507]) no cause can be removed from a state to a national court unless it is one which could have been originally brought in that court. Tennessee v. Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Cochran v. Montgomery County, 199 U. S. 260, 26 Sup. Ct. 58, 50 L. Ed. 182; Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264.

[2] It is urged that, as this is a suit to recover penalties imposed by the laws of the state of Arkansas, this court is without jurisdiction. Wisconsin v. Pelican Insurance Company, 127 U. S. 265, 8 Sup. Ct. 1370, 32 L. Ed. 239, is cited as conclusive of that question. It was there held that:

"The rule that the courts of no country execute the penal laws of another applies not only to prosecutions and sentences for crimes and misdemeanors, but to all suits in favor of the state for the recovery of pecuniary penalties for any violation of statutes for the protection of its revenue, or other municipal laws, and to all judgments for such penalties." 127 U. S. 290, 8 Sup. Ct. 1374, 32 L. Ed. 239.

In that case the suit was brought by the state itself to recover a penalty for the benefit of the state, and, as stated by the court in its opinion, the act complained of was not any private injury, but solely an offense committed against the state by violating her law. The prosecution in that case was in the name of the state, and the whole penalty, when recovered, would accrue to the state and be paid into her treasury, although the insurance commissioner would receive one-half of the amount recovered; he paying all expenses of the prosecution for and collecting such forfeitures. The court in the opinion said:

"The real nature of the case is not affected by the forms provided by the law of the state for the punishment of the offense. It is immaterial whether, by the laws of Wisconsin, the prosecution must be by indictment or by action; or whether, under that law, a judgment there obtained for the penalty might be enforced by execution, by scire facias, or by a new suit. In whatever form the state pursues her right to punish the offense against her sovereignty, every step of the proceeding tends to one end, the compelling the offender to pay a pecuniary fine by way of punishment for the offense." 127 U. S. 299, 8 Sup. Ct. 1379, 32 L. Ed. 239.

Does the fact that under the statute upon which this action is based no part of the penalty goes to the state, but is for the sole benefit of the party injured, who, alone, can maintain the action therefor, distinguish it from the Wisconsin case? The only reported case which the court has been able to find, in which it was held that that case applies to all penalties, whether they are for the benefit of the state or a private person, is Hamilton v. Jos. Schlitz Brewing Company (C. C.) 100 Fed. 675, decided by the United States Circuit Court for the Northern District of Iowa; but, when the identical question came

again before that same court (another judge presiding), the Hamilton Case was expressly overruled. United Breweries Co. v. Colby (C. C.) 170 Fed. 1008. The last case was removed by writ of error to the United State Circuit Court of Appeals, but was dismissed by the plaintiff in error without a hearing in that court. 178 Fed. 1005, 101 C. C. A. 664.

The leading case in which the English and American authorities on this subject, as well as Wisconsin v. Pelican Insurance Company, are fully reviewed, is Huntington v. Attrill, 146 U. S. 657, 667, 13 Sup. Ct. 224, 227, 36 L. Ed. 1123, and it was there held that:

"Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American Constitutions, the executive of the state has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal."

The statute there under consideration provided that the officers of any corporation who have made a certificate or report, or statements by public notice, which were false in any material representation, shall be jointly and severally liable for all the debts of the corporation contracted while they are officers thereof. This, it was claimed, was a penal action, and for that reason could not be maintained in the courts of any other sovereignty than that which enacted the statute. But the Supreme Court held that it was not a penal law in the international sense that it cannot be enforced in the courts of another state, but that it merely afforded a private remedy to a person injured by the wrongful act, and therefore could be enforced in the courts of any other state if not contrary to their public policy.

In Brady v. Daly, 175 U. S. 148, 20 Sup. Ct. 62, 44 L. Ed. 109, it was held that an action under section 4966, U. S. Revised Statutes (U. S. Comp. St. 1901, p. 3415), which prescribes a minimum penalty for infringing a copyright of a dramatic composition, is not for the recovery of a penalty which would make it unenforceable in the courts of any other sovereignty than that which enacted it. Other cases decided by the national courts sustaining this view are Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439; Atlanta v. Chattanooga F. & P. Co., 127 Fed. 23, 61 C. C. A. 387, affirmed in 203 U. S. 390, 27 Sup. Ct. 65, 51 L. Ed. 241; Boston & Maine R. R. Co. v. Hurd, 108 Fed. 116, 47 C. C. A. 615, 56 L. R. A. 193; Gruetter v. Cumberland Tel. & Tel. Co. (C. C.) 181 Fed. 251; United Breweries Co. v. Colby, supra.

In Boston & Maine R. R. Co. v. Hurd, the action was brought in a court of the United States to recover damages for the death of plaintiff's intestate, caused, it was charged, by the negligence of the defendant railway company, and the action was based solely on a statute of the state of Massachusetts. The jurisdiction of the court was challenged upon the same grounds the jurisdiction of this court is now challenged; but it was overruled. Judge Putnam, who delivered the opinion of the court, said:

"The statutory remedy on which this suit relies is found in Pub. St. Mass. 1882, c. 112, par. 212. The section is divisible into two parts, the first of

which provides that the corporation shall be punished by fine. It fixes a maximum and minimum penalty, without any guide for determining where the fine shall rest between the extremes. It is to be recovered by indictment, and prosecuted within one year from the time of the injury. Being indictment, there is no occasion to indicate in the statute by what rule the court shall be guided in determining the amount of the fine as between the extremes named. In this respect, the court is left, as in ordinary procedings where a maximum and minimum fine is created by statute, to determine its amount by the degree of criminality. This is peculiarly appropriate to a statute strictly penal, because the question of the extent of a fine or other punishment is properly governed by local considerations, acting upon judicial discretion, thus imposing a duty which a foreign court cannot well perform. The statute further provides that the fine shall be paid to the executor for the use of the widow and child, or, if no widow or child, to the next of kin. This, and all the other peculiarities to which we have referred, are indicia of a strictly penal statute, because, while the next of kin may possibly have an interest in the life of the person deceased, yet they do not necessarily, and the statute admits no inquiry whether or not they have any. * * * The civil remedy, which appears in the latter portion of section 212, is found in sections 1 and 6 of chapter 199 of the Acts of 1881, so that the remedy by indictment preceded the remedy by civil action. Not only, however, does the latter portion of section 212 confine the party prosecuting to elect between an indictment and a civil action, but in Littlejohn v. Railroad Co., 148 Mass. 478, 482, 20 N. E. 103, 2 L. R. A. 502, it was held that the civil action is merely a substitute for the indictment. * * * Although the act of 1881 afforded a civil action, it was in all other respects on all fours with the proceeding by indictment. To emphasize that fact, it provided that the damages should be assessed with reference to the degree of culpability of the corporation, which, of course, was not necessary in those portions of the various statutes which related to an indictment. Therefore it would seem that, if one part of section 212 is strictly penal in its purpose, the other must be."

And after a full review of all the authorities it was held by the court:

"That the statute, while in form penal, was not strictly so, and the civil remedy in the alternative must be regarded as remedial in an international sense, authorizing action to be brought thereunder in the federal courts of another state."

In Claflin v. Houseman, 93 U. S. 130, 137, 23 L. Ed. 833, it was held:

"If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court."

The conclusion reached from these authorities is that the courts of the United States have jurisdiction to entertain actions for the recovery of penalties given by state statutes to individuals to compensate them for injuries sustained, but they will not entertain jurisdiction of a cause whereby it is sought to recover a penalty for the use of the state, even if the nominal plaintiff is an individual, but the penalty, when collected, is to be paid into the state treasury, although a part thereof goes to the informer or person suing therefor. Or, to state it differently, a penalty for a wrong to the people of the state collectively is a penal action in the international sense and cannot be enforced in the courts of any other sovereignty than that which enacted it. On the other hand, if the penalty is for an injury or

wrong to an individual to be recovered for his benefit solely, then the action is transitory and may be maintained in any court, whether domestic or foreign. As this is an action solely for the benefit of the plaintiff, who claims to have been injured by the acts of the defendant, this court would have original jurisdiction of the cause, and therefore has on removal.

Does the complaint state a cause of action?

The construction placed upon this statute by the Supreme Court of Arkansas is that the statute must be divided into three clauses, as follows:

"(1) Every telephone company doing business in this state and engaged in a general telephone business shall supply all applicants for telephone connection and facilities without discrimination or partiality, provided, etc.

"(2) And no such company shall impose any condition or restriction upon any applicant that is not imposed impartially upon all persons or companies in like situation.

"(3) Nor shall such company discriminate against any individual or company, engaged in lawful business, by requiring, as a condition for furnishing such facilities, that they shall not be used in the business of the applicant, or otherwise, under penalty of $100 for each day such company continues such discrimination and refuses such facilities after compliance or offer to comply with the reasonable regulations, and time to furnish the same has elapsed; to be recovered by the applicant whose application is so neglected or refused." Yancey v. Batesville Telephone Co., 81 Ark. 486, 493, 99 S. W. 679, 680.

The discrimination charged by plaintiff in his complaint would arise under what the court specifies as clause 1 of the act, as there is no claim that any conditions or restrictions were imposed upon the plaintiff that are not imposed impartially upon all persons in like situations or conditions that they shall not be used in the business of the applicant. As the statute does not expressly define what shall constitute discrimination or partiality, this will have to be determined by the common law. In fact, this act, while giving a new remedy and imposing severe penalties, was merely declaratory of the common law. Cumberland Telegraph & Telephone Co. v. Kelly, 160 Fed. 316, 320, 87 C. C. A. 268, 272. In that case the Tennessee statute on that subject, which is identical with that of the state of Arkansas, was before the court. Mr. Justice Lurton, then Circuit Judge, delivering the unanimous opinion of the court, said:

"These conclusions support the view stated above that the Tennessee act of 1885 (Acts 1885, c. 66) is only declaratory of the common-law duty not to discriminate, and enforcing that obligation by penalties. It follows, therefore, that conduct which would not amount to an illegal discrimination by such a public service company at the common law would not be an illegal discrimination under the statute. Not only is this statute to be read in the light of the common law, but we must assume, as before stated, that the severe penal provisions against discrimination were imposed with knowledge of the character of the peculiar business regulated, and without any purpose to interfere with the methods for the conduct of such business usual with such companies, and calculated to insure efficiency of service with reasonable business economy. When a statute is merely declarative of the common law, or in affirmance of it, and is in the general terms of the common law, there is no safer rule for its construction than that so well stated by Sutherland upon Statutory Const. par. 290, that 'the best construction of a statute is

to construe it as near to the rule and reason of the common law as may be, and by the course which that observes in other cases.'"

It is not claimed by learned counsel for the plaintiff that a resident of the county outside of the limits of the city of Little Rock is entitled as a matter of right to have telephone connection furnished him by defendant upon request. On the contrary, it is admitted that defendant has a right to limit its business within the corporate limits of that city if it so desires. But it is claimed that: ·

"As the defendant installed telephones and telephone connections in the residences of Fred Hohenschutz and Peter Barzen prior to plaintiff's application, and plaintiff's residence, where he desires to have the telephone placed, being no farther from the end of its line than the places of residence of these parties and would entail less expense to defendant for making the extension, their refusal is an unlawful discrimination within the meaning of the statute."

In Western Union Telegraph Co. v. Call Publishing Co., 58 Neb. 192, 78 N. W. 519, involving a question of discrimination in charges. by the Telegraph Company, the trial judge gave, among other instructions to the jury, the following:

"You are instructed that not every discrimination in rates charged by a telegraph company is unjust. In order to constitute an unjust discrimination, there must be a difference in rates under substantially similar conditions as to service; the rate charged must be a reasonable rate; under like conditions it must render its services to all patrons on equal terms."

The charge having been approved by the Supreme Court of the state, the cause was removed by writ of error to the Supreme Court of the United States, and the charge of the court, including the foregoing excerpt, was by that court approved; the court saying:

"No one can doubt the inherent justice of the rules thus laid down. * * * Of course, such equality of right does not prevent differences in the modes and kinds of service and different charges based thereon. There is no cast-iron, line of uniformity which prevents a charge from being above or below a particular sum, or requires that the service shall be exactly along the same lines." Western Union Telegraph Co. v. Call Publishing Co., 181 U. S. 92, 21 Sup. Ct. 561, 45 L. Ed. 765.

In the Yancey Case it was held that:

"It (the telephone company) may require the charges for such services to be paid in advance. This power is given for its own protection. In the exercise of it, it may extend credit for such charges to persons it may deem deserving. This is· a reasonable exercise of the power, and is essential to its success. * * * The statute forbidding discriminations does not deny the right. It does not come within the evils the statute was intended to suppress." 81 Ark. 494, 99 S. W. 681.

In Gamble-Robinson Com'n Co. v. Chicago & N. W. Ry. Co., 168 Fed. 161, 94 C. C. A. 217, 21 L. R. A. (N. S.) 982, it was sought to hold the Railway Company liable in damages for refusing to advance the charges of connecting carriers upon freight consigned to plaintiff and hold the bills until the question regarding the correctness of the charges on its lines and other connecting lines had been adjusted, and then collect the bills from the consignees. It was charged in the complaint that defendant refused to advance charges to connecting lines or to transport freight consigned to the plaintiff unless

the charges for transportation were prepaid, while it did do these things for other consignees similarly situated. This, it was claimed, was not only in violation of the common law, but also in violation of the interstate commerce act, which prohibits all unreasonable preferences and discriminations. A demurrer to the complaint having been sustained by the trial court, the cause was removed on writ of error to the Circuit Court of Appeals, where the judgment of the lower court was sustained. The thorough review of the authorities on that subject, and the opinion of that learned jurist, Judge Sanborn, make it unnecessary for this court to cite any other authorities.

From these, and other authorities, it is clear that to entitle a recovery under this statute a discrimination or partiality against the party complaining must be unreasonable and unjust, and not merely an act of grace or a gratuity to some other person or persons.

As stated by Chief Justice White in Standard Oil Co. v. United States, 221 U. S. 1, 63, 31 Sup. Ct. 502, 517 (55 L. Ed. 619), in construing the Sherman anti-trust act:

"The merely generic enumeration which the statute makes of the acts to which it refers, and the absence of any definition of 'restraint of trade' as used in the statute, leaves room for but one conclusion, which is that it was expressly designed not to unduly limit the application of the act by precise definition, but, while clearly fixing a standard—that is, by defining the ulterior boundaries which could not be transgressed with impunity—to leave it to be determined by the light of reason, guided by the principles of law and the duty to apply and enforce the public policy embodied in the statute in every given case, whether any particular act or contract was within the contemplation of the statute."

[3] Nor should it be overlooked that this statute is highly penal, as shown by the fact that the penalties claimed in this cause, and which plaintiff would be entitled to, if there is a recovery, amount to $38.500, while the rentals, if the connection had been made and the telephone placed as requested by plaintiff, would have been $32.50 for the entire period covered by the complaint. Such statutes must be construed strictly, and, unless the plaintiff claiming under them brings himself clearly within the letter of the law, he cannot recover. Greely v. Thompson, 10 How. 225, 13 L. Ed. 397; Tiffany v. National Bank, 18 Wall. 409, 21 L. Ed. 862; Elliott v. East Pennsylvania R. Co., 99 U. S. 573, 25 L. Ed. 292; Providence Steam Engine Co. v. Hubbard, 101 U. S. 188, 25 L. Ed. 786; Keppell v. Tiffin Savings Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790; Erbaugh v. United States, 173 Fed. 433, 97 C. C. A. 663.

[4] Thus construed, the acts complained of do not constitute a violation of the statute. It is not claimed, nor can it be justly claimed, that the defendant can be compelled as a matter of course to extend its lines outside of the corporate limits of the city for one-half mile or more whenever demanded by a resident. Nor does the fact that the company sees proper to grant such a privilege to one or two parties change this rule. The defendant had the right to build and maintain a line some distance from its lines as a gratuity or a special favor. Whether it was prompted to do so by the expectation of more subscribers along that line or as a matter of grace to the particular

persons is immaterial. It is only when these facilities are granted generally to persons similarly situated as the plaintiff that the refusal to extend to him the same privileges may become a discrimination within the meaning of the statute.

In Illinois Central R. R. Co. v. Dunnigan, 95 Miss. 749, 50 South. 443, 24 L. R. A. (N. S.) 503, the appellee who was a minister of the gospel, made application for transportation at a reduced rate, alleging and showing that it was customary for the company to furnish all ministers this rate. The Railroad Company refused to give him this rate. The complaint alleged that this refusal was wanton, willful, and oppressive and unlawfully discriminated against the appellee. There was judgment for the plaintiff in the trial court, and upon appeal it was reversed by the Supreme Court; that court saying:

"The declaration is challenged on the ground that it shows no cause of action. The only duty which appellant owed to appellee was to furnish him with transportation over its lines at the same rate and under the same conditions that it furnished same to the general public. Permitting a minister of the gospel, or any person, to travel at a rate lower than that given the general public, is a mere gratuity, which appellant can withhold at its pleasure, and even a custom so to do imposed upon it no obligation to give such permission."

If the contention of plaintiff is correct, every person in the county, or in fact the state, would eventually have a right to compel the defendant to build and maintain a line and furnish him a telephone in his residence or place of business. By extending the line one-half mile in every direction, whenever it is demanded, the company, although organized solely to operate in one city and its immediate suburbs, would soon have to cover every section of the state, and that regardless of the fact whether the business would justify the cost necessary to cover so much more territory than it was originally organized to maintain or has the capital necessary to accomplish it.

Nor does the fact that plaintiff offered to pay the expense of constructing this line change the duties and responsibilities of defendant. The company cannot be compelled to accept gratuities. Besides, there is no offer to pay for the maintenance of the line which may amount to a great deal more than its construction or the rental paid by plaintiff.

In the opinion of the court the acts described in the complaint do not constitute a discrimination or partiality within the meaning of the statute or at common law, and therefore the plaintiff is not entitled to recover.

The demurrer to the complaint will be sustained.