SMITH *v.* SOUTHWESTERN TELEGRAPH & TELEPHONE

COMPANY.

Opinion delivered June 16, 1913.

1. EVIDENCE—CONFLICT—VERDICT.—Where there are conflicts in the testimony of witnesses the questions of fact are settled by the verdict of the jury. (Page 47.)

2. TELEPHONE COMPANIES—DUTY TO GIVE SERVICE.—Under Kirby's Digest, § 7948, providing that "every telephone company doing business in this State and engaged in a general telephone business shall supply all applicants for telephone connection and facilities, without discrimination or partiality, provided such applicants comply with the reasonable regulations of the company," etc., a telephone company is only required to furnish service to applicants who comply with its reasonable regulations. (Page 47.)

3. TELEPHONE COMPANIES—REASONABLE RULES—QUESTION FOR COURT.— Whether the rules of a telephone company, made under Kirby's Digest, § 7948, requiring applicants for service to comply with its rules, are reasonable, is a question for the court. (Page 49.)

4. TELEPHONE COMPANIES—RULES AND REGULATIONS.—Where a city ordinance authorizes a telephone company to make a certain charge for installing a telephone, when a line has to be constructed over a certain distance, the rule may be applied to all applicants for service, whether within the city limits or not. (Page 50.)

5. TELEPHONE COMPANIES—RULES AND REGULATIONS—APPLICATION FOR SERVICE.—Under section 7948 of Kirby's Digest, a telephone company may make reasonable rules and regulations governing applications for service, and when such rules require a payment in advance by the applicant, and he has knowledge thereof, nothing but a tender will be a sufficient observance of the rule. (Page 50.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant brought this suit against the telephone company, claiming the penalty denounced by law for discrimination against him in failing to supply him with telephone service at his residence at 1304 Olive street, in Argenta, Arkansas.

The complaint alleges that he was a resident within the corporate limits of Argenta, within the boundaries of the territory where the defendant operates a telephone system in said city. That it maintains a telephone system and lines for the use of the public in said city; that he applied to the defendant to furnish him the usual telephone service, signifying a willingness to comply with all the reasonable requirements and all lawful demands the defendant might make, but that the defendant refused to comply with his request and wilfully discriminated against him, its action being contrary to and at variance with a practical compliance of the request of the plaintiff, "and discriminatory in that other subscribers in said vicinity were receiving and are receiving the services of the defendant as above requested by the plaintiff, under conditions entailing no greater expense or hardship upon the defendant than would have been entailed by compliance with the plaintiff's demand and request."

The answer denies that the plaintiff demanded on December 8, 1911, that he be furnished with telephone service at his residence address and that he offered to comply with the reasonable rules and regulations of the telephone company or pay its reasonable charges as the condition of compliance with his request and that it discriminated against him. It denied that he resided within the territory where it operated and that it was supplying other customers within the vicinity of his residence with telephone service under conditions entailing no greater expense or hardship than would have been incurred on compliance with his demands. Alleged

that it was under the statute and the common law per-
mitted to establish reasonable rules and regulations for
the government of its business in supplying the public
with telephone service.  That in the proper exercise of
its discretion it had prescribed the rules requiring per-
sons desiring telephone service and connection for local
exchange service whose residence was more than two
blocks distant from the defendant's pole line to deposit
with it a sum of money sufficient to reimburse it for the
extra expense of building to such residence or place of
business.  That it had uniformly enforced said rules and
regulations against all persons similarly situated with
the plaintiff; that it did not discriminate against him in
enforcing said rules and regulations which were adopted
in good faith and under the belief that it had the right
to make them both under the statute and under the com-
mon law and its franchise with the city of Little Rock
and ''that it offered to install a telephone and furnish
plaintiff telephone service at said number on Olive
Street, Argenta, provided he would comply with its rule
and regulation, by depositing with it sufficient money to
reimburse it for the extra expense of building to his
residence; that he declined to do this, and that, for this
reason, it refused to install said telephone at said place;
that said rule and regulation was reasonable and not
arbitrary; that it protects the defendant from waste,
and benefits the public.''

It alleged further that it uniformly enforced the rule
for the purpose of conserving its resources and property
and to enable it to economically and profitably serve the
public.  That it was adopted and enforced in good faith
in the belief that it was reasonable and just.  The city
of Little Rock regarded it so.  Alleged further that it
was operating a telephone exchange in the city of Little
Rock under a franchise from said city.  That the city of
Argenta was located across the river therefrom and that
it had no exchange in said city and no contract or fran-
chise with it, binding it to operate one; that it has never
held itself out as engaged in furnishing telephone service
to all of the citizens or inhabitants of Argenta; that as

to Argenta and its inhabitants, it has only undertaken to serve certain districts therein; that it adopted this course from necessity; that the city of Argenta covers a large area of territory and embraces within its corporate limits many sparsely settled communities and a great many communities inhabited by people who can not afford and do not wish telephone service; that plaintiff resides in one of such communities, his residence facing a large unplatted field, and being surrounded on the other side by the homes of negroes and people who are unable to afford and do not wish telephone service.

From the testimony it appears that Clement A. Smith, appellant, is a physician, and living at 113 North Olive Street, Argenta, in December, 1911, but moved therefrom on the 15th of said month to 1304 Olive Street, which was three blocks from Main Street, and which extends out to Twenty-seventh Street, beyond the plaintiff. He applied for his phone to be changed to his new address just before moving, went to the office of the telephone company in Little Rock, asked for the manager and talked with the lady, who said she was the assistant manager; told her he desired the phone moved from 113 North Olive Street to 1304 Olive Street, and she told him to come back in two or three days and she would let him know about it. When he returned, Mr. Stout, the manager, who was in the office, being told he was the man who desired the phone removed, said he would send a man out to investigate it; and later told him, "We have sent a man over to investigate and we find that you are not living near the line and you can not get a phone;" he said, "the only way you can get a phone is you will have to get poles and put wires up yourself, and if you do that we will connect with you;" told the plaintiff he could either do this or move on to the line of the company, to which he replied he was a physician and needed the phone and was willing to do anything reasonable to get it, but could not do that. He was then told he would have to build the line himself; this was upon the second conversation, following that with the lady and the first conversation had with the manager. He said further

that the demand was made on December 8 and the phone never had been put in and the suit was brought on the 11th or the 12th of January following.

Not being pleased with the manager's statement, he wrote the company a letter, asking the company to give him service.  Said letter is as follows:

"Southwestern Telegraph & Telephone Company, Little Rock, Ark.:

Dear Sirs:  In regard to moving my phone, 2586, 113 Olive Street, Argenta, Ark., you said I would have to build my line.  I was talking to a man in the country; he said he could furnish the poles at 12½ cents per foot. If I buy the poles, will I have to have them put in, or will you pay for any kind of work being done?  Please let me know soon.  Yours truly,

(Signed)                    C. A. Smith."

To which he received the following reply, on December 20:

"Little Rock, Ark., December 20, 1911.

Dr. C. A. Smith, 102 South Magnolia Street, Argenta, Ark.:

Dear Sir:  Replying to your letter of the 18th inst., will say that we would connect with a line which you would build from your residence to our construction. This is, of course, if you build and furnish entire line. We do not, under any circumstances, build a portion of the line.  We will install telephone and make necessary connection, if you will do as per above.  Before you take any steps toward building this line, it would be best that you take the matter up with authorities in Argenta, as to the right to place poles on the streets of that city; that is, of course, if the streets on which you are to place poles are within boundary of the city limits.

Yours truly,

(Signed)                    C. Stout,
                    District Manager."

He testified that his residence was within the city of Argenta, the limits of which extended thirteen or fourteen blocks beyond him.  That the telephone company served the residents of Argenta as such, placing

phones in various stores and houses; that the nearest phone to his residence was two blocks distant, at the St. Louis Cotton Compress No. 2. Another was three blocks distant on Thirteenth and Main. Another at the public school, three blocks from the plaintiff. That there were five or six phones within a radius of two or three blocks of his residence, all furnished by the defendant. He then went into a particular description of the location as to the different places at which phones were installed in relation to his residence.

In January he again wrote the defendant as follows:

"Southwestern Telegraph & Telephone Company, Little
    Rock, Ark.:

Sirs: I wrote you, but have never heard from you. I want telephone connection at 1304 Olive Street, Argenta, Ark. I have been living at 113˙Olive Street, Argenta, Ark. I would like to have my phone moved to 1304 Olive. I am willing to pay proper toll of same usually charged. Trusting to hear from you by return mail,

Yours truly,

(Signed)                C. A. Smith, M. D."

He said he had a talk with Mitchell, one of the defendant's employees and the contracting agent of the defendant after his application for a phone was put in, that he had also written him a letter, to which he had no reply.

The stenographer in the manager's office stated that on about December 15 or 16, the plaintiff came to the office and made an order to remove his phone from 113 North Olive to 1304 Olive Street. That she made an "outside move" order December 14, and cancelled it December 19, 1911; had a conversation with plaintiff on December 13. She told him she didn't think they had any facilities in that vicinity, but she would make the removal order and make the investigation. That the second time he came Mr. Stout was in, and he had about the same conversation as over the telephone. She suggested that he take his phone out and that would reserve

his number for him and that a "take out" order was
entered on the 19th of December for 2586, "moved where
we had no facilities and no other phones near this ad-
dress." His number was reserved for him a consider-
able time and the company sent and canvassed his sec-
tion of the city, which she promised to do between the
16th and 19th. That the company did this in all cases
where there were no facilities; that they would have con-
nected with his line if he had built one, whether they
could have obtained other subscribers or not. The com-
pany would have built the line and connected with him if
it could have gotten enough subscribers and told him so,
or that it could build the line and connect with him, if
he would pay six months' rent in advance and one-half
the cost of construction beyond two blocks, and he ob-
jected to this.

Mitchell, the contracting agent, stated he went to
the residence on January 4, and found it was three or
four blocks off the line and tried to find what business
could be procured in the vicinity, and, fearing there
were no good prospects out there, mostly laborers and
colored people living in the vicinity, did not succeed in
getting any subscribers. Identified the report written,
"No other prospects near this address;" also, "Line
order No. 1577 will require increased plant facilities as
follows: Twelve twenty-five-foot poles and cost of
labor, estimated at $60, dated Little Rock, December 16,
1911." Line order No. 1577, signed by Bennett, plant
foreman, which went through the manager's office; took
it to see what business could be procured and whether it
would justify building the line. He told the plaintiff
the distance it was and the rules regarding the matter
and that he would have to make a deposit to secure the
service there. Did not tell him what the amount was,
because he didn't know.

The defendant next introduced in evidence section
17, of the ordinances of the city of Little Rock, regard-
ing its franchise, as follows: "Section 17. That said
company shall furnish such telephone service, as is ap-
plied for by any one, to any point within the limits of

this city now or hereafter fixed, without favor or discrimination; provided, that where customers can be served with the telephone without placing poles the same shall be done without extra charge upon the payment of the subscriber of three months' rent in advance and the execution of a year's contract; where poles have to be placed, not exceeding two blocks, upon the execution of a one-year's contract and payment of six months' rent in advance, plus the cost of construction of the excess of the line over two blocks; said excess cost to be accredited on telephone rent due after the expiration of the six months paid in advance.''

Witness said he saw Doctor Smith later in Little Rock, and, upon being asked about the phone, told him he was too far from the facilities. That he would have to make an advance payment or deposit to get the services, and when he was ready to accept it to call at the office. He did not say that he would accept the proposition.

The plant foreman, Bennett, said he examined the location on December 16, 1911, described the kind of houses and people living out there; he investigated it on the order of the commercial department and estimated that it would cost $60 to extend the line; stated how many poles would be required to carry the line two blocks, etc. This witness described the streets upon which the lines of the company are located in Argenta and also the connections with the different phones near the locality of the Smith residence, which he said was 1,000 feet across private property from the company's poles; the nearest their line reached his residence was on Thirteenth and Main. Said a line could have been constructed and a connection made from its nearest point in three days; that it was more than three blocks from Smith's residence to Compress No. 2, the defendant's wires going to Compress No. 2.

Mr. Stout, the manager, testified that Smith came and wanted service at the new address and he told him that they had no facilities in the neighborhood, but on receipt of his request had that neighborhood canvassed

for additional subscribers to justify the company in making the expenditure, and he told Smith that he was unable to get any. "He then asked me what he should do, and I told him if he would pay us six months' rent in advance and the cost of construction beyond the first two blocks of poles, which would be refunded to him after that six months' rental deposited had expired, we would put him in a telephone. He said that he was too poor and couldn't afford to put up that money, and asked me what other proposition we had. And I didn't say anything to that. Then he made a proposition to me to build the line from his residence to our construction, and asked me if we would connect with him there. I told him we would, and he said he would let me hear from him, and his letter of the 18th of December was relative to his proposition, to which I replied on the 20th, as set out." He denied that he suggested at all that Doctor Smith should build the line.

Doctor Adair, who formerly lived at the same address, told Smith, upon inquiry as to whether he could get telephone service, that he had never been able to get a telephone there, and of the reason why, and also of the company's regulations about the service. Smith denied this, and said that Doctor Adair told him he would have to do one or two things: That he would have to build the line and put in the poles himself and the company would make connection, and that if "I didn't do that I would have to move from that house to another house on the line." He denied that Adair told him anything about the rules of the company or the deposit required.

There was testimony by Doctor Bostick that he lived more than two blocks beyond the company's poles and had had the service installed without additional pay, but the testimony of other witnesses shows that his residence was within two blocks of the company's lines. Appellant did not pay nor offer to deposit any money for rent in advance, as required by the regulations in order to secure the service, and claims he was not advised of

the rule and that he would have been willing and was able to comply with it if it had been brought to his attention.

The court instructed the jury, giving the following among others over appellant's objections:

"The court instructs the jury that a rule of a telephone company, requiring the payment of six months' rentals in advance where such company has to build a line of telephone poles and wires a distance of two blocks to reach the subscriber, is reasonable; and that where the party desiring telephone service resides more than two blocks from the telephone company's line of poles, it is legal and reasonable for such company to require, in addition to the payment of said rentals in advance, that such person shall deposit a sum of money sufficient to reimburse such company for the cost of furnishing and building such additional line of poles and wires in excess of the said two blocks; and to credit such deposits on telephone rentals falling due after six months."

No. 2. "You are instructed that the burden is on the plaintiff to show by evidence fairly preponderating that he offered to comply with all of the defendant's reasonable rules and requirements after same were called to his notice; that if you find that he resides more than two blocks from defendant's line of poles, such burden is on him to show that he tendered the defendant six months' rental in advance, and, in addition thereto, that he offered to deposit with said defendant a sum of money sufficient to cover the cost of furnishing and building all of said line in excess of two blocks, and that if he has failed to show this by a fair preponderance of testimony, your verdict will be for the defendant."

The jury returned its verdict in favor of the telephone company, and from the judgment thereon appellant brings this appeal.

*E. L. McHaney* and *X. O. Pindall,* for appellant.

The first instruction was inapplicable, because the defendant had not pleaded that it had a rule applicable to telephone rentals *in Argenta;* it was further erroneous

in saying that the company had the right to require the payment of six months' rentals in advance where the company had to build a line, and that this rule was reasonable.

The court also errs in its second instruction in placing the burden on the plaintiff to show that he *tendered* to the defendant six months' rentals in advance, and that he offered to deposit a sum sufficient to cover the cost of furnishing and building all of said line in excess of two blocks.

The idea contained in other instructions that regard must be had to an applicant's location or surroundings where no franchise exists, makes the statute operative only where a municipality grants a franchise, and the company's liability dependant on the franchise. There is no such escape from the provisions of the statute. Kirby's Dig., § 7948; 81 Ark. 486, 493; 94 Ark. 533, 536, 538; 192 Fed. 200.

*A. P. Wozencraft,* Dallas, Tex., and *Walter J. Terry,* for appellee.

Where there is no dispute as to the existence of a rule, it is for the court, and not the jury, to declare whether it is or is not reasonable. Thompson on Electricity, § 200.

Appellant's objection to the charge to the jury that the burden was on appellant to show that he tendered six months' rental in advance, under the claim that the statute only requires that the applicant shall signify "in a proper way" his willingness to comply with the reasonable rules and regulations of the company, is answered by the fact that he did not signify such willingness in *any way.* 81 Ark. 486; 100 Ark. 546; 89 Ga. 777; *Id.* 754; 95 Ind. 29; 94 Ga. 336; 28 Fed. 181; Jones on Tel. & Tel. Companies, § 431; Craswell on The Law Relating to Electricity, § 372.

The test of the reasonableness of a regulation is whether it is fairly and generally beneficial to the company and all its customers, not whether some other rule would answer its purpose as well or better. 28 Fed. 181.

Whatever might have been the duty of the company if it had by contract or franchise expressly agreed to furnish all persons with telephone service, regardless of expense, location or surroundings, the law certainly would not require this in the absence of such franchise or contract. 183 U. S. 79; 46 Law. Ed. 103; 192 Fed. 200. See also 45 Ark. 158; 59 Am. St. 457; 19 Fed. 679; 52 Fed. 917; 1 L. R. A. 750.

KIRBY, J., (after stating the facts). It is insisted, first, that there is no evidence to support the verdict, that incompetent testimony was introduced and that the court erred in giving said instructions numbered 1 and 2.

There is no doubt but that the telephone company did refuse to furnish facilities and service to the address of Doctor Smith, except upon the condition of a compliance with its rules, nor can it be doubted that in reply to his letter about building the extension of the line to his residence it replied that it would not build any portion of the line, but would install a telephone and make necessary connections if he built and furnished the line. This does not show, however, that Doctor Smith offered to comply with the rules and regulations of the company, relative to furnishing service to persons situated in like condition with himself. The manager of the defendant company, its assistant manager, the contracting agent and the line construction foreman all testified that they told Doctor Smith of the rule requiring the deposit of money for the expense of construction and six months' phone rent in advance before connection was made with a subscriber located more than two blocks beyond the pole line of the company, unless enough subscribers could be procured in the locality to justify the expense, and that the appellee had the district canvassed for other subscribers and none could be obtained. These witnesses say that appellant did not accept nor indicate any intention of accepting the proposition as required by the rule and the manager testified that he (Smith) suggested building the line himself and was told by him that the

company would make the connection if he did so, and that the letters in evidence were written relative to that proposition only. The testimony was in conflict on this point, but the preponderance of it appears in the company's favor, and in any event the verdict of the jury against appellant settled the question of fact.

The ordinance of the city granting the franchise under which the appellee company operated, permitting the charge to be made upon which its rule was founded was also introduced in evidence, and the contracts with Bostick and Menea in Argenta, as well as other contracts and applications introduced in evidence, show that it was not only the rule but the custom of the company to require a compliance with it in order to the supplying of telephone service to the class of subscribers desiring it and like situated with appellant more than two blocks beyond the pole lines of the company both in Argenta and in Little Rock.

The statute, section 7948, Kirby's Digest, provides:

"Every telephone company doing business in this State and engaged in a general telephone business shall supply all applicants for telephone connection and facilities without discrimination, or partiality, provided such applicants comply, or offer to comply, with the reasonable regulations of the company. And no such company shall impose any condition or restriction upon any applicant that is not imposed impartially upon all persons or companies in like situation."

In *Danaher* v. *S. W. Tel. & Tel. Co.*, 94 Ark. 536, the court, construing the statute, said: "The telephone company in devoting its property to a use in which the public has an interest, becomes a public servant and is bound to serve the public impartially. It is like common carriers in that it is bound to serve those applying to it impartially and upon equal terms. * * * Being a public servant, it can not refuse to serve any one of the public in that capacity in which it has undertaken to serve the public when such one offers to pay its rates and comply with its reasonable rules and regulations."

In the same case, 102 Ark. 550, 144 S. W. 926, *S. W.*

*Tel. & Tel. Co.* v. *Danaher,* the court said: "The telephone company has the right to make and enforce reasonable rules and regulations for the guidance of its subscribers, and, in case the subscriber refuses to obey such regulations, may refuse to furnish such telephone service without being guilty of discrimination. * * * Telephone companies by the necessity of commerce and by public use have become common carriers of communications, and as such must supply all alike who are alike situated and can not discriminate in favor of or against any one."

In *Younts* v. *Telephone Co.,* 192 Fed. 200, the court, construing this statute, said: "It is only when these facilities are granted generally to persons similarly situated as the plaintiff that the refusal to extend to him the same privileges may become a discrimination within the meaning of the statute."

It is true, the statute says that telephone companies engaged in the general telephone business shall supply all applicants for telephone connection and facilities without discrimination, etc., but certainly the statute was not intended to require that telephone service should be furnished all applicants therefor. It only denounces a penalty against discrimination and after an offer on the part of the person demanding service to comply with its reasonable regulations. It is prohibited from imposing any condition or restriction upon any applicant for service that is not imposed impartially upon all persons or companies in like situation; and the proof shows that the telephone company acquainted the applicant for service with its regulations requiring the payment of six months' rent in advance and the deposit of the cost of construction of the excess of the line over two blocks, where an extension is necessary to connect and give service, and that it required all persons in a like class or similarly situated with appellant to comply with said rules and regulations, and, such being the case, there could have been no discrimination against him within the meaning of the statute, the rule being reasonable. It was not contended that the rule was unreason-

able, but rather its existence and application was denied, and the court in the first instruction complained of declared it to be reasonable, and it was a matter for the court to determine. Thompson on Electricity, 200.

It is also true section 17 of the ordinance introduced in evidence as the rule of the company, relates only to furnishing service within the city of Little Rock, authorizing the charge therein to be made, but this did not prevent the company applying it, which the proof shows it did do as a rule and regulation to be complied with by all persons demanding service in localities where it operated without regard to whether it was within the limits of the city of Little Rock, or the sister city of Argenta across the river, and we fail to see the force of appellant's objection to instruction numbered 1 on account thereof. Neither do we see that instruction numbered 2 complained of was incorrect in declaring that the burden was upon the plaintiff to show by a preponderance of the testimony that he offered to comply with the defendant's reasonable rules and regulations, and if the jury should find that the residence where he desired the service was more than two blocks distant from the defendant's line of poles that the burden of proof would be upon him to show that he tendered the defendant six months' rent in advance, and, in addition thereto, offered to deposit with it a sum of money sufficient to cover the cost of furnishing and building said line in excess of two blocks, failing to show which that the verdict should be for the defendant. Since the rule required the payment in advance of the six months' rental, plus the cost of the extra construction, we can see no objection to telling the jury that the burden was upon the defendant to show he had tendered such amount, for his last letter, in which he said he was "willing to pay proper toll of same usually charged," certainly would not be regarded as an offer to pay said sum, neither was it intended to be such an offer, as explained by Doctor Smith, who said he did not even know that there was any such rule. This letter must be taken in connection with the other two, and also with the negotiations which had

been carried on between the parties and could not be considered a compliance or an offer to comply with the rule that would subject the company failing thereafter to comply with the demand, to the penalty denounced by the statute. It may be that if plaintiff had offered to pay in advance the required amount a tender thereof would not have been necessary, if the defendant had expressed an intention not to extend the service any way, but all the testimony shows, except that of appellant, that the company was willing to extend its facilities and give the service upon the compliance with its rule; that it canvassed the district to see if enough subscribers could be procured to give the service without requiring a compliance with the rule and that no disposition upon the part of appellant was shown to make the required payment in advance, the testimony, except his own, showing that he was unable to, or did not care to do so, and his own letter, relative to the building of the line, rather corroborates the statement of the manager that he himself suggested or asked if the service could be given if he constructed the line himself. The testimony on the part of the appellee showed the requirements of its rule; that it informed appellant of such requirement and the necessity for the payment in advance of the rental with the excess cost of the line, which would not be constructed and the service given except upon a compliance therewith upon the part of appellant, and we see no objection to the court having told the jury that after he was so advised that it was necessary on his part to show a tender of the money, and a failure thereafter of the telephone company to give the service, in order for him to recover the penalty for its failure to do so. Nothing else but a tender under such circumstances would have amounted to an offer to comply with its reasonable regulations within the meaning of the statute. *Danaher* v. *S. W. Tel & Tel. Co.,* 94 Ark. 533.

It was probably not necessary for appellee to introduce some of the testimony complained of, but it was done in order to meet questions raised by appellant in

the introduction of its testimony and to show in detail that there had been no failure on its part to comply with its rule in connecting with other residences and places of business nearest the residence of appellant; the jury might otherwise have inferred from some of the testimony, but for the introduction of this, that because such telephones were located near to this place, the company was required to give the service demanded by appellant and subject to a penalty for having failed to do so.

We find no prejudicial error in the record, and the judgment is affirmed.