## Pratt et al. v. Hollenbeck

*Floyd Kennedy*, for plaintiffs.

*John B. Brooks*, for defendant.

KITTS, P. J., March 1, 1943. — This action was started by a summons in assumpsit to recover the sum of $50 for each time that defendant demanded and received from plaintiffs rent in excess of the maximum permissible for the housing accommodations known as 2206 Bird Drive, Wesleyville, Erie, Pa. The statement of claim alleges that defendant rented the premises for $12 a week, whereas Maximum Rent Regulation No. 28, established for Erie County by the administrator of the Emergency Price Control Act of January 30, 1942, 56 Stat. at L. 23, sec. 205, 50 U. S. C. sec. 925, determined the maximum to be $9 per week.

On the return day of the writ defendant, instead of filing his affidavit of defense as required by the Practice Act, appeared de bene esse and moved the court to strike off both the summons and the statement of claim on the ground that assumpsit "is not the proper form of action to collect the penalty for which action is brought." The case is now before the court for disposition of this motion. Apparently this is the first case in the State of Pennsylvania to be brought under

section 205 (*e*) of the Emergency Price Control Act of 1942. The determination of the pending motion will thus establish a precedent for Pennsylvania. The return day was February 8, 1943. The statement of claim had been served on defendant more than 15 days prior to the return date.

The right created by section 205 (*e*) of the Emergency Price Control Act of 1942 is not a penalty. This section gives a right of action to a tenant who has been charged excess rent to recover from the landlord three times the amount of the excess, or $50, whichever is greater. To call this recovery a "penalty" is to confuse the terms "remedial" and "penal". This action is brought by two injured individuals, not by the State or Federal Government, to recover in their own right damages, the amount of which is liquidated by statute and which do not inure to the monetary advantage of the Government. That a statute giving a private right of action is remedial and not penal has been considered settled in America since 1892 when the United States Supreme Court initiated a series of decisions distinguishing the two types of action.

In Huntington v. Attrill, 146 U. S. 657 (1892), it was said (p. 667):

"Penal laws, strictly and properly, are those imposing punishment for an offence committed against the State, and which, by the English and American constitutions, the executive of the State has the power to pardon. Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal."

The Emergency Price Control Act of 1942 authorized only the injured tenant to bring suit under section 205 (*e*). When the right of action is thus limited to

the party aggrieved, the action is remedial and not penal.

1 C. J. S. 1180, Actions, §59, Remedial and Penal: "A remedial action is to be distinguished from a penal action in that the former is given to, and is brought by, the party aggrieved, and the recovery allowed is in the nature of compensation or indemnity for the injury done or loss sustained, an action of this character being remedial notwithstanding the amount recoverable may exceed the damages proved, while the latter is given to, and may be brought by, anyone who will sue, such as a common informer, or a designated plaintiff who need not show that he has sustained any injury, and the recovery allowed is not to compensate plaintiff, but to punish defendant."

The fact that the tenant is allowed a recovery of not merely the amount of the overcharge, but three times that amount, does not transform the remedial character of the action into a suit for a penalty. Double damages have been held to be remedial rather than penal: Whitman v. Oxford National Bank, 176 U. S. 559 (1900) ; Kirtley v. Holmes, 107 Fed. 1 (1901).

The Whitman and Kirtley cases involved statutes imposing double liability on shareholders of corporations. In both cases the fact that the action to recover double damages was brought by an individual rather than the Government was considered decisive of the nature of the action.

Increasing the recovery from double to treble damages does not change the nature of the action: Chattanooga Foundry and Pipe Works v. City of Atlanta, 203 U. S. 390 (1906).

The Chattanooga case involved treble-damage actions authorized by the Sherman Anti-Trust Act. Mr. Justice Holmes, in writing the opinion in this case, stated that Huntington v. Attrill, supra, clearly re-

quired the statute to be construed as remedial and not penal.

In Anglo-American legal history there have been numerous statutes authorizing recovery of the type here involved. In Cox v. Lykes Bros., 237 N. Y. 376, 143 N. E. 226 (1927), Justice Cardozo, then of the New York Court of Appeals, held that a suit under the Federal Seaman's Act, which provided that seamen whose wages were withheld could recover as wages two days' pay for every one during which payment was withheld, was not a suit to recover a penalty, but was a remedial action properly brought in a New York State court. Although uninitiated laymen often have a naive belief that the winner of a lawsuit receives full compensation, all lawyers and all courts know this is illusory. Where small sums are involved, the double and treble damage feature is merely one way of attempting to render full restitution to the injured party for the time, trouble, and delays usually attendant in enforcing his rights. So considered, treble damages are remedial in fact as well as in law.

In lieu of treble damages, section 205 (e) authorizes the flat sum recovery of $50. Many statutes involving flat sum recoveries have been construed and held remedial rather than penal. Statutes involving a recovery of $100 per day for each day of discriminatory refusal of telephone service have been held, for purposes of jurisdiction, remedial: Younts v. Southwestern Telegraph & Telephone Co., 192 Fed. 200 (1911); Gruetter v. Cumberland Telephone & Telegraph Co., 181 Fed. 248 (1909). In holding such a statute not penal, a Federal court has even gone so far as to hold that where the statute called the flat sum recovery a "penalty", and required that the action be instituted by indictment, it was remedial, because brought by a private party: Boston & M. R. R. v. Hurd, 108 Fed. 116 (1901).

A flat sum recovery is involved in the copyright statutes. In Brady v. Daly, 175 U. S. 148 (1899), the copyright infringement statute giving the injured party a recovery of $100 for the first day, and $50 for each subsequent day of infringement, was held remedial and not penal. A New Mexico statute giving a flat recovery of $5,000 in a death action was held by the United States Supreme Court to be a remedial and not a penal action: Atchison, Topeka & Santa Fe Railway Co. v. Nichols, 264 U. S. 348 (1924).

Perhaps the most similar statute of wide scope today is the Federal Fair Labor Standards Act, which provides that employes may recover from their employers double the amount of unpaid wages. Lower courts have uniformly held this double-damage provision to be remedial. Last year the United States Supreme Court wrote the final word in a holding that this act was not penal: Overnight Motor Transportation Co., Inc., v. Missel, 316 U. S. 572 (1942).

In adopting the Emergency Price Control Act of 1942, Congress relied upon the Fair Labor Standards Act of June 25, 1938, 52 Stat. at L. 1060, as a precedent in considering treble damage actions under section 205 (e) (cf. S. Rep. no. 931, 77th Cong., 2nd Sess., p. 9), and it was intended that this section of the act should serve the same purpose in the enforcement of the fight against inflation as the similar double-damage provision served in the fight for fair wages.

Under Pennsylvania practice, all actions in their nature ex contractu have been combined in the action of assumpsit, and all those ex delicto in the action of trespass. The phraseology of defendant's motion to strike the summons in assumpsit indicates that his real objection is to the requirement that he file an affidavit of defense. Inasmuch as the choice of the wrong remedy is no longer fatal, as it was under common-law plead-

ing, and a correction can be made by a mere motion to amend, defendant's motion to strike would appear to be wholly technical and possibly in the nature of a delaying action which seems to bring forth a desire to escape the necessity of filing an affidavit of defense. Defendant's eminent counsel admits that if the action is properly in assumpsit then he must file an affidavit of defense. Consequently, the balance of this opinion will be devoted to considering whether assumpsit or trespass is the proper mode of action. The question then is: Is the remedy given to the plaintiffs by section 205(e), supra, of the Emergency Price Control Act of 1942 a remedy ex contractu or ex delicto, i. e., is it based on contract or tort?

The question is a new one in Pennsylvania. The State court cases reported in the O. P. A. services to date are not helpful because of dissimilarity in practice or failure to indicate in the reported decision the nature of the action. New York, for example, under the Code of Civil Procedure, has a single method of instituting any civil action, and the nature of the action from a view of distinguishing between assumpsit and trespass would naturally not arise, except the special actions such as replevin, mandamus, habeas corpus, quo warranto, and the like. See 1 Standard Pa. Practice—Actions, sec. 8, pp. 304-305; Act of May 10, 1871, P. L. 265, 12 PS §535.

It is significant to note that in the latest issue of the Procedural Rules Committee of the State of Pennsylvania there has been proposed for adoption Rule 3001, Civil Action for Damages, that actions formerly brought in assumpsit or trespass shall hereafter be brought in a single form of action at law to be called a "civil action for damages." * The style of this rule is

---

* This rule has not been submitted to the Supreme Court of Pennsylvania with a recommendation for adoption but has been submitted by the committee for consideration and discussion.—EDITOR.

adapted from the Act of 1887, which consolidated the actions of covenant, debt, and assumpsit into the action of assumpsit and the actions of trespass, case, and trover into the action of trespass. See Act of May 25, 1887, P. L. 271. This rule has not yet been adopted but shows the tendency again to change our entire practice.

An action ex contractu is basically one involving some form of contractual relationship between the parties, express or implied. A tort has defied definition ever since the term was coined, though its Latin root, torquere, tortus, tortum, means wrong, injustice, to twist, to wring. The late Justice Holmes considered a contract "as only a conditional liability to pay damages, avoidable by performance." Under this theory, the present action would come under the domain of contracts, for the defendant could have avoided the damages claimed in this suit by performance of the mandate of Maximum Rent Order No. 28.

The Restatement of Contracts seems to suggest that obligations created by law are quasi-contracts, enforceable at common law in a manner similar to true contracts.

"Comment: a. Contracts are often spoken of as express or implied. The distinction involves, however, no difference in legal effect, but lies merely in the mode of manifesting assent. Implied contracts must be distinguished from quasi-contracts, which also have often been called implied contracts or contracts implied in law. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice. Such obligations were ordinarily enforced at common law in the same form of action (assumpsit) that was appropriate to true contracts, and some confusion with reference to the nature of quasi-contracts

has been caused thereby": A. L. I. Restatement of the Law of Contracts, p. 7, §5.

A common definition of tort is: "Any wrong, injury, or damage, not including breach of contract, for which a civil suit can be brought."

Under this theory, a violation of section 205(e) of the Emergency Price Control Act of 1942 is a breach of a quasi-contract, is in its nature ex contractu as distinguished from ex delicto, and is enforceable in the same type of action as other rights arising from contract relationships. That this theory is dominant in American jurisprudence is clearly reflected in Corpus Juris Secundum and the supporting cases cited.

"Contracts implied in law, or, as stated supra §4, more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity": 17 C. J. S. 322, Contracts, §6, Constructive or Quasi Contracts.

No Pennsylvania cases are cited in this section of Corpus Juris except the peculiar case of Cameron, to use, v. Eynon, 332 Pa. 529 (1939), where the court makes the following statement (p. 532):

"A quasi contract arises where the law imposes a duty upon a person, not because of any express or implied promise on his part to perform it, but even in spite of any intention he might have to the contrary."

It should be noted that the Cameron case was a suit

in assumpsit and, although reversed on the ground that the lower court tried the case on a hybrid theory warranting a new trial, assumpsit was impliedly treated as the proper form of action to enforce a quasi-contractual right.

Assuming that this action is determined to be remedial as distinguished from penal, the fact that the action should be treated as based on contract rather than tort is further strengthened by a consideration of the fact that many courts treat even a penalty as contractual in nature; a fortiori a remedial action necessarily must be contractual.

"According to one view a civil action for the recovery of a penalty is regarded as in the nature of an action ex contractu as being founded upon the implied contract which every person enters into with the state to observe its laws. [Arizona, New Jersey, New York, North Carolina]. According to another view, however, the right of action does not arise out of contract, but is based upon tort. [Alabama, Illinois, Massachusetts, Virginia and Wisconsin.]": 25 C. J. 1183, Fines, Forfeitures and Penalties, §83, Contract or Tort.

Assuming that it has been satisfactorily established that (1) assumpsit is the proper remedy and (2) the action is essentially based on contract, not tort, the only remaining question is: Does there exist any reason why the defendant should not be required to file an affidavit of defense?

The Pennsylvania Practice Act requires an affidavit of defense in assumpsit actions, but does not require an affidavit of defense in trespass actions. Furthermore, in the mixed cases where the liability is based on breach of contract, and hence the suit is in assumpsit, but the nature of the breach is negligence, ex delicto in nature, then no affidavit of defense is required

as to the tort portion. The reason for this is that damages arising from tort cannot be definitely established prior to trial because the amount depends on the opinion of witnesses. This explanation of why an affidavit of defense is not required in tort actions is given in Cowan v. Nagel et al., 89 Pa. Superior Ct. 122 (1926), as follows (p. 125):

"In other words, if a claim is essentially one to recover damages for negligence, even though the liability arose out of a contract, the averments of the statement as to the negligent act and the damages resulting therefrom are not admitted by mere default of the defendant and must be proven. To take an extreme example, if a common carrier contracted to carry a passenger safely to a certain destination, and through negligence failed to do so and the passenger suffered injury, he could not by bringing his action in assumpsit, as he would have the right to do (McCall v. Forsyth, 4 W. & S. 179; Pittsburgh City v. Grier, 22 Pa. 54, 65) bind the defendant as to the money value of his pain and suffering because the defendant could not definitely state how much he should be compensated therefor, and made no denial or only a general one on the subject. In defending an action essentially tortious in character, even though brought in assumpsit, the provisions of the act relative to affidavits of defense in actions of tort (sec. 13) will be applied in so far as they relate to the averments relied on to establish negligence and the damages claimed. This is especially the case, where as here, the damages sustained are not fixed by the contract or their amount intrinsically established, but must be determined by the opinion of witnesses."

See also Bilk v. Abbotts Dairies, Inc., 147 Pa. Superior Ct. 39 (1941).

In the present proceeding the amount of damage is liquidated in advance and nothing depends on the opinion of witnesses to establish the amount. Consequently, it is not the type of action in which the filing of an affidavit of defense is excused.

In view of the foregoing, we make the following

### Order

Now, to wit, March 1, 1943, the rule granted February 8, 1943, to show cause why the summons and the statement of claim in this case should not be stricken off and that all proceedings be stayed meantime be and the same is hereby overruled and discharged, and defendant is directed to file an affidavit of defense to plaintiffs' statement in assumpsit within 15 days sec. leg. or judgment.