## BRADY *v.* DALY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND
CIRCUIT.

No. 52. Argued October 18, 1899. — Decided November 20, 1899.

Section 4966 of the Revised Statutes, enacting that "any person publicly performing or representing any dramatic composition for which a copyright has been obtained, without the consent of the proprietor thereof, or his heirs or assigns, shall be liable for damages, therefor, such damages in all cases to be assessed at such sum, not less than one hundred dollars for the first, and fifty dollars for every subsequent performance, as to the court shall appear to be just," is not a penal statute and neither provides for the recovery of a penalty nor a forfeiture.

This action, being brought to recover damages for the violation of a dramatic copyright, and not being one to recover either a penalty or a forfeiture, the Circuit Court had jurisdiction of it by virtue of Rev. Stat. § 629, Subdivision 9, which confers upon Circuit Courts jurisdiction of all suits at law or in equity arising under the patent or copyright laws of the United States.

In the absence of any Federal statute of limitations, an action like this is limited by the limitation existing for the class of actions to which it belongs in the State where it was brought.

The question, as an original one, of how far a copyright of a play protects any particular scene therein from being publicly produced or represented by another, aside from the dialogue contained in the play, is not before the court in this case.

There was no election of an inconsistent remedy, which would bar the plaintiff from recovering in this action.

THIS was an action at law brought by Augustin Daly, and prosecuted since his death by the executors of his will, for

the violation of a dramatic copyright. In 1867 Daly was the owner of a dramatic composition entitled "Under the Gas Light," and in that year he took out a copyright therefor in the United States.

The play was produced by Daly and his licensees, and became quite popular, and he derived considerable profit from its production by himself and from the royalties he received. The chief value of the play and its popularity depended upon an incident in the third scene of the fourth act, commonly described as the railroad scene, where one of the characters is laid helpless upon a railroad track upon which a railroad train is momentarily expected that will run him down and kill him, and just at the last moment another of the characters contrives to reach the intended victim and drag him from the track as the train rushes in and passes over the spot.

After the play was produced, Dion Boucicault prepared a play called "After Dark," in which he introduced a railroad scene differing but slightly and only colorably from that which appeared in "Under the Gas Light." The plaintiff in error, defendant below, without the consent of Daly, produced and procured to be publicly performed on the stage in divers cities the play "After Dark," including the railway scene.

On the 20th of May, 1889, Daly brought a suit in equity against the plaintiff in error herein in the Circuit Court of the United States for the Southern District of New York, in which he prayed that the defendant might be perpetually enjoined from the further performance of the play "After Dark," upon the ground that the performance was an infringement of the copyright of his play "Under the Gas Light," and he asked for an accounting for all money and profits received by the defendant in that suit by reason of the performance of the play "After Dark" and of the railroad scene therein.

The complainant moved for a preliminary injunction, which was denied upon the ground that there was a material variance between the registered title and the published title of "Under the Gas Light," and that therefore the complainant had not a valid copyright. *Daly* v. *Brady*, 39 Fed. Rep. 265. After the taking of proofs on the issues joined by the defend-

ant's answer, the Circuit Court, following the decision of the court upon the motion for an injunction, dismissed the bill with costs. *Daly* v. *Webster*, 47 Fed. Rep. 903. An appeal was taken by Daly from this decree to the Circuit Court of Appeals, where it was reversed, and the cause remanded with instructions to enter the usual decree for an accounting and a perpetual injunction, the Circuit Court of Appeals holding that the plaintiff's copyright was valid, and the railroad scene in his play was itself a dramatic composition and protected by the plaintiff's copyright, which had been infringed by the defendant in the production of the play "After Dark," with the railroad scene therein. *Daly* v. *Webster*, 1 U. S. App. 573. The only charge of infringement consisted in the production of that scene.

Pursuant to the mandate of the Circuit Court of Appeals, a decree for a perpetual injunction was entered by the Circuit Court, November 5, 1892, and it was referred to a master to take proof of the number of unauthorized performances of the play "After Dark," with the railroad scene, which had been given by the defendant. The court did not direct the master, either in the decree or in the order of reference, to ascertain anything in regard to profits; no evidence was offered before him upon that subject, and no finding was made thereon. A final decree in the case, accepting the master's report and making his findings the findings of the court, was entered on April 1, 1893, but no decree for profits was asked or rendered.

Another appeal was taken to the Circuit Court of Appeals, and the decree affirmed, with costs, June 7, 1893. 11 U. S. App. 791.

The mandate of the Circuit Court of Appeals on this second appeal was filed in the Circuit Court, June 14, 1893, and a decree in conformity therewith duly entered. The defendant attempted to obtain a review of the judgment against him by appealing to this court, but his appeal was dismissed for the reasons stated in *Webster* v. *Daly*, 163 U. S. 155.

The present action was commenced July 14, 1893, by Daly against Brady, the plaintiff in error herein, in the United

States Circuit Court for the Southern District of New York, to recover damages for the violation of his copyright, placing their amount at $13,700. The complaint contained two counts, the first making no reference to section 4966 of the Revised Statutes, while the second alleged that the defendant had infringed his copyright in violation of the provisions of that section, and that "by virtue of the provisions of said act of Congress (the copyright act) and of said section 4966 of the Revised Statutes of the United States, the defendant then and there became liable to pay to said plaintiff the sum of $13,700, lawful money of the United States, as damages."

The answer of the defendant denied the infringement and set up various defences which are noticed in the following opinion. A jury trial was waived, and the court found the facts as above stated, and held that the copyright obtained by Daly was good and valid, and covered and protected the railway scene already described; that the acts of the defendant were in disregard of the copyright and of plaintiff's exclusive rights therein.

It was also found by the court that the evidence did not authorize an increase of the damages above the minimum amount provided for by section 4966 of the Revised Statutes, and that it had no power to establish a rule of damages below the minimum amount provided for therein, and that such section should be construed as penal rather than remedial in its character. The only testimony in this-action on the hearing before the master as to the number of representations which the defendant Brady had given that were infringements of the plaintiff's copyright, and upon which a judgment for damages could be based, was the evidence of the defendant in the equity suit above mentioned, and introduced before the master in this action, and such evidence the court decided was inadmissible for that purpose, upon the ground that evidence obtained from a party by means of judicial proceedings could not be used against him for the enforcement of a penalty; and because of the absence of all legal evidence as to the number of representations the defendant was entitled to judgment, refusing any recovery for damages.

Subsequently, upon application to the court, the cause was opened and testimony, entirely independent of that of the defendant in the plaintiff's examination of him in the accounting before the master in the equity suit, was presented as to the number of times the play of "After Dark" had been produced by the defendant, with the railroad scene in it, and upon that evidence a finding was made that the plaintiff was entitled to judgment against the defendant of $50 for each performance falling within the period of two years prior to the commencement of the action; that is to say, for 126 performances, or the sum of $6300 with costs. The court restricted the plaintiff's right to damages to two years because it held that the action was brought to recover a penalty, and that the two years' statute of limitations applied. The defendant brought the case by writ of error before the Circuit Court of Appeals for the Second Circuit, where the judgment was affirmed, *Brady* v. *Daly*, 51 U. S. App. 621, and he then sued out a writ of error from this court, and the case is now here for review.

*Mr. David Gerber* for plaintiff in error. *Mr. A. J. Dittenhoefer* was on his brief.

*Mr. Stephen H. Olin* for defendants in error.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

The first objection made by the plaintiff in error to the judgment in this case is that the Circuit Court had no jurisdiction of the action because it was brought to recover a penalty or forfeiture under section 4966 of the Revised Statutes, and it was contended that the District Courts of the United States have by law exclusive jurisdiction over that class of actions.

Whether the District Courts still have exclusive jurisdiction over an action to recover for a forfeiture or a penalty arising from a violation of the copyright act, it is not necessary to

here determine, because we think that section 4966 of the Revised Statutes, upon which this suit is founded, is not a penal statute, and therefore the action in this case is not one to recover either a penalty or a forfeiture, and the Circuit Court had jurisdiction of the action by virtue of section 629 of the Revised Statutes, subdivision 9, which grants jurisdiction to the Circuit Courts " of all suits at law or in equity arising under the patent or copyright laws of the United States." Section 4966 of the Revised Statutes reads as follows:

"Any person publicly performing or representing any dramatic composition for which a copyright has been obtained, without the consent of the proprietor thereof, or his heirs or assigns, shall be liable for damages therefor, such damages in all cases to be assessed at such sum, not less than one hundred dollars for the first, and fifty dollars for every subsequent performance, as to the court shall appear to be just."

The act of August 18, 1856, c. 169, 11 Stat. 138, was the first Federal statute which conferred upon the author or proprietor of any dramatic composition, designed or suited for public representation, "along with the sole right to print and publish the said composition, the sole right also to act, perform or represent the same, or cause it to be acted, performed or represented on any stage or public place during the whole period for which the copyright is obtained." The same act further provided that any "manager, actor or other person acting, performing or representing the said composition, without or against the consent of the said author or proprietor, his heirs or assigns, shall be liable for damages to be sued for and recovered by action on the case or other equivalent remedy, with costs of suit in any court of the United States, such damages in all cases to be rated and assessed at such sum not less than one hundred dollars for the first, and fifty dollars for every subsequent performance, as to the court having cognizance thereof shall appear to be just."

Section 101, of chapter 230, of the Statutes of July 8, 1870, 16 Stat. 198, 214, reënacted the provision of the act of 1856,

giving damages to the proprietor of any dramatic composition against any person wrongfully representing the same. Then came the revision of the statutes, and section 4966 embodies the provisions contained in the above mentioned acts of 1856 and 1870, in regard to the recovery of damages.

These statutes, it will be perceived, all use the word "damages" when referring to the wrongful production of a dramatic composition. No word of forfeiture or penalty is to be found in them on that subject. It is evident that in many cases it would be quite difficult to prove the exact amount of damages which the proprietor of a copyrighted dramatic composition suffered by reason of its unlawful production by another, and yet it is also evident that the statute seeks to provide a remedy for such a wrong and to grant to the proprietor the right to recover the damages which he has sustained therefrom.

The idea of the punishment of the wrongdoer is not so much suggested by the language used in the statute as is a desire to provide for the recovery by the proprietor of full compensation from the wrongdoer for the damages such proprietor has sustained from the wrongful act of the latter. In the face of the difficulty of determining the amount of such damage in all cases, the statute provides a minimum sum for a recovery in any case, leaving it open for a larger recovery upon proof of greater damage in those cases where such proof can be made. The statute itself does not speak of punishment or penalties, but refers entirely to damages suffered by the wrongful act. The person wrongfully performing or representing a dramatic composition is, in the words of the statute, "liable for damages therefor." This means all the damages, that are the direct result of his wrongful act. The further provision in the statute, that those damages shall be at least a certain sum named in the statute itself, does not change the character of the statute and render it a penal instead of a remedial one. The whole recovery is given to the proprietor, and the statute does not provide for a recovery by any other person in case the proprietor himself neglects to sue. It has nothing in the nature

of a *qui tam* action about it, and we think it provides for the recovery of neither a penalty nor a forfeiture.

If, upon the trial of such an action, the court should find from the evidence that the plaintiff had, in fact, sustained a greater amount than the minimum sum of damages provided in the statute, and should direct judgment in his favor for the sum so proved, would that judgment be for a penalty? On the contrary, it would be for the actual amount of damages which the evidence showed had been sustained by the plaintiff, and his recovery of that sum would be the recovery provided by the law for the wrong which he had suffered. When the evidence does not warrant a greater than the minimum recovery, the amount named in the statute still constitutes the remedy provided by the law, which plaintiff can pursue.

In *Huntington* v. *Attrill*, 146 U. S. 657, 667, there is a very full discussion of the meaning of the word " penal " when used in reference to the maxim of international law that " The courts of no country execute the penal laws of another." In the course of the opinion in that case it was stated by Mr. Justice Gray, speaking generally as to what constituted a penal statute, as follows :

" The action of an owner of property against the hundred to recover damages caused by a mob was said by Justices Willes and Buller to be ' penal against the hundred, but certainly remedial as to the sufferer.' *Hyde* v. *Cogan*, 2 Doug. 699, 705, 706. A statute giving the right to recover back money lost at gaming, and, if the loser does not sue within a certain time, authorizing a *qui tam* action to be brought by any other person for threefold the amount, has been held to be remedial as to the loser, though penal as regards the suit by a common informer. *Bones* v. *Booth*, 2 W. Bl. 1226; *Brandon* v. *Pate*, 2 H. Bl. 308; *Grace* v. *M'Elroy*, 1 Allen, 563; *Read* v. *Stewart*, 129 Mass. 407, 410; *Cole* v. *Groves*, 134 Mass. 471. As said by Mr. Justice Ashhurst in the King's Bench, and repeated by Mr. Justice Wilde in the Supreme Judicial Court of Massachusetts, ' it has been held, in many instances, that where a statute gives accumulative damages to the party grieved, it is not a penal action.' *Woodgate* v.

*Knatchbull*, 2 T. R. 148, 154; *Read* v. *Chelmsford*, 16 Pick. 128, 132. Thus a statute giving to a tenant, ousted without notice, double the yearly value of the premises against the landlord, has been held to be 'not like a penal law where a punishment is imposed for a crime,' but 'rather as a remedial than a penal law,' because 'the act indeed does give a penalty, but it is to the party grieved.' *Lake* v. *Smith*, 1 Bos. & Pul. (N. R.) 174, 179, 180, 181; *Wilkinson* v. *Colley*, 5 Burrow, 2694, 2698. So in an action given by statute to a traveller injured through a defect in a highway, for double damages against the town, it was held unnecessary to aver that the facts constituted an offence, or to conclude against the form of the statute, because, as Chief Justice Shaw said: 'The action is purely remedial, and has none of the characteristics of a penal prosecution. All damages for neglect or breach of duty operate to a certain extent as punishment, but the distinction is that it is prosecuted for the purpose of punishment, and to deter others from offending in like manner. Here the plaintiff sets out the liability of the town to repair, and an injury to himself from a failure to perform that duty. The law gives him enhanced damages; but still they are recoverable to his own use, and in form and substance the suit calls for indemnity.' *Reed* v. *Northfield*, 13 Pick. 94, 100, 101."

Where the statute provides in terms, as the one before us does, for a recovery of damages for an act which violates the rights of the plaintiff, and gives the right of action solely to him, the fact that it also provides that such damages shall not be less than a certain sum, and may be more, if proved, does not, as we think, transform it into a penal statute.

So a statute which makes a person liable for his wrongful neglect or default by which the death of another person is caused, and which gives a right of action to the administrator for the benefit of the widow and next of kin, to recover damages for the pecuniary injuries resulting from his death, thus altering the common law and imposing a new liability, has been held by this court not to be penal, and to be enforceable in a State other than the State in which the statute was

passed, and in which the wrongful act and death occurred. *Dennick* v. *Railroad Company,* 103 U. S. 11; *Texas & Pacific Railway* v. *Cox,* 145 U. S. 593; *Stewart* v. *Baltimore & Ohio Railroad,* 168 U. S. 445.

Although punishment, in a certain and very limited sense, may be the result of the statute before us so far as the wrongdoer is concerned, yet we think it clear such is not its chief purpose, which is the award of damages to the party who had sustained them, and the minimum amount appears to us to have been fixed because of the inherent difficulty of always proving by satisfactory evidence what the amount is which has been actually sustained.

The English statute of 3 & 4 William IV, c. 15, entitled, " An act to amend the laws relating to dramatic literary property," by its second section provides that a person who wrongfully produces and represents a dramatic composition " shall be liable for each and every such representation to the payment of an amount not less than forty shillings, or to the full amount of the benefit or advantage arising from such representation, or the injury or loss sustained by the plaintiff therefrom, whichever shall be the greater damages, to the author or other proprietor of such production so represented."

In *Chatterton* v. *Cave,* 3 App. Cas. 483, 492, the court in speaking of this provision for damages said that the same " was no doubt fixed because of the difficulty of proving with definiteness what amount of actual damage had been sustained by perhaps a single performance at a provincial theatre of a work belonging to a plaintiff, whilst at the same time his work might be seriously depreciated if he did not establish his right as against all those who infringed upon it." This does not look as if that statute were regarded by the English courts as one of a penal nature, but on the contrary as one of a remedial kind providing for the recovery of the damages sustained by the plaintiff, and providing for the recovery of a minimum sum for the reason, as stated by the court, of the difficulty of proving with definiteness in all cases the amount of damages which plaintiff really had suffered.

The court below was, as is stated in the opinion, somewhat influenced in its decision of this question by the belief that if this were not a penal statute there was no Federal statute of limitations applicable to it, and said that it could hardly be supposed that it was the intent of Congress to permit such a statutory rate of damages to run without Federal statutory limitation. If there were no such Federal statute, then the state statute would apply. Although not an action to recover a statutory penalty or forfeiture, still, in the absence of any Federal statute of limitations, it would be limited by the limitation existing for the class of actions to which it belongs in the State where the action was brought. *Campbell* v. *Haverhill*, 155 U. S. 610, 614.

We think the plaintiff in error fails to sustain his first objection to the judgment herein.

Another objection made is that section 4966 renders defendant liable only when substantially the whole of a copyrighted play is produced, and not when merely a single incident in one of the acts is represented.

In the equity suit between these parties, already referred to, the complainant therein alleged that he had a copyright of the play "Under the Gas Light," in which was the railroad scene, which made up the substantial value of the play and the one upon which the profits of the production of the play depended, and that the defendant had infringed upon the complainant's copyright by producing that same railroad scene in the defendant's play of "After Dark."

The answer of the defendant put in issue the existence and validity of complainant's copyright, denied any infringement whatever, and also raised the question whether there could be any infringement where the only part of plaintiff's play that was produced was the railroad scene as described.

Upon the trial of the issues the complainant succeeded, and obtained a decree which established the validity of his copyright, and determined that the railroad scene in the complainant's play, apart from the dialogue which accompanied the scene, was a dramatic composition, and entitled to protection under the copyright laws. *Daly* v. *Webster*, 1 U. S. App.

573. It determined also that there could be an infringement of the copyright when the only part of plaintiff's play that was produced was the railroad scene, and that the defendant had in that manner infringed the copyright of the plaintiff. An injunction was decreed and a reference made to the master to ascertain the number of times, etc., that the infringement had occurred.

In the opinion of the court, the case of *Daly* v. *Palmer,* 6 Blatchford, 256, where the same question arose in regard to the same scene, was referred to and followed. The judgment record in the equity suit was introduced in evidence in this case, and it was conclusive upon the matters which had been in issue in the suit as between these parties, and neither of them can ever again raise such questions between themselves. *Southern Pacific Railroad* v. *United States,* 168 U. S. 1. We have, therefore, the fact conclusively established by that record that this railroad scene was a dramatic composition, protected by the plaintiff's copyright. The section (4966) of the Revised Statutes covers such a case. Any person publicly performing or representing any dramatic composition protected by copyright, under the circumstances named in that section, is liable for the damages sustained by the proprietor, and as the fact is conclusively established between these parties that the railroad scene is a dramatic composition, and that it is protected by copyright, the statute covers such a case, and makes the plaintiff in error liable for the production of that scene.

The question as an original one of how far a copyright of a play protects any particular scene therein from being publicly produced or represented by another, aside from the dialogue contained in the play, is not before us, because the judgment in the equity suit between these same parties establishes the fact of the copyright, and also that the railroad scene is a dramatic composition protected by that copyright.

The plaintiff in error also contends that the trial court erred in admitting in evidence the record in the equity suit as proof of the material allegations of the complaint.

It does not appear herein that the record in the equity suit was admitted for the purpose stated. The record was admis-

sible for the purpose of showing the validity of the copyright, and that the railroad scene was a dramatic composition protected by it. The bill of exceptions herein shows that the record was not used for the purpose of proving the number of times the play of "After Dark" had been represented containing the railroad scene, nor in any way to show the amount of damages which the plaintiff had sustained by reason of the defendant's infringement of his copyright.

The further objection, that the answer of the defendant in the equity suit was inadmissible for the purpose of proving any admission of the defendant therein which might tend to render him liable for a penalty or forfeiture, becomes immaterial by our holding that the statute under which this action is brought is remedial and not penal. It appears, however, in this record that, although the answer was received as a part of the whole record in the case between these parties in the equity suit, it was not, nor was any evidence given by defendant, used upon the final hearing, in any way whatever, for the purpose of showing any admission on his part, but on the contrary, evidence outside and independent of any admission or evidence of the defendant was produced, and it was with reference wholly to such independent evidence that the recovery was granted. There was no error in this procedure.

The plaintiff in error further claimed that the plaintiff below, by first proceeding in equity for an injunction, and incidentally for an accounting of profits, made an election to recover profits, which effectually barred him from a recovery of damages under the statute.

The equity action was brought to enjoin the defendant from performing the play of "After Dark" with the railroad scene in it, taken from the plaintiff's play "Under the Gas Light," and the injunction was asked for on the ground that plaintiff's injuries could not be accurately ascertained or computed, and compensation for such injury could not be made by damages, and as a portion of the relief complainant asked that the defendant be decreed to render a full and true account of all money and profits received by him. The decree in that case, however, did not direct the master to ascertain anything in

regard to profits, no evidence was offered upon that subject, no finding was made thereon, and upon the coming in of the master's report no final judgment or decree for profits was ever asked or rendered.

In view of these facts, we think there was no election of an inconsistent remedy by the plaintiff in the action which would bar him from the maintenance of this action for the recovery of damages under the section of the Revised Statutes before referred to.

Conceding that he might in the equity suit have recovered profits if there had been an accounting concerning the same, and that a decree for their recovery would be a bar to a proceeding under the statute, yet the plaintiff was not bound to take such remedy; and when in fact he did not take it, and there was no accounting for profits in the equity suit, no decree made in regard to them and no recovery had, we see nothing to prevent the plaintiff in this action from recovering under the statute the damages which he has sustained by reason of the infringement of his copyright by the defendant.

Other objections were taken by the plaintiff in error upon questions of evidence which do not call for special consideration. They were properly disposed of by the court below.

Our ruling in this case, if it had obtained upon the trial, might have permitted a larger recovery than the plaintiff secured, because the statute upon which the action is founded, not being of a penal character, the two years' statute of limitations to which the plaintiff was limited in his recovery does not apply. But as the plaintiff did not seek to review the correctness of the decision of the trial court, and contented himself with the recovery actually obtained, his executors have now no cause of complaint on that account and they assert none.

Upon a full review of the case, we are of opinion that there was no error committed prejudicial to the plaintiff in error, and the judgment is, therefore,

*Affirmed.*