**UNITED STATES of America,**
**Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. 3298-70.**

United States District Court,
District of Columbia.

July 30, 1974.

**600**

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Lloyd N. Cutler, Washington, D. C., for defendant.

## MEMORANDUM-ORDER

GASCH, District Judge.

This matter is before the Court for a determination respecting what civil penalties, if any, should be assessed against General Motors for failure to send safety-defect notifications in regard to 15 × 5.50 Kelsey-Hayes disc wheels [1] [hereinafter referred to as WHEELS]. The Secretary of Transportation, through his delegate, ordered the sending of these notifications pursuant to 15 U.S.C. § 1402(e). General Motors resisted. In view of this Court's finding that a safety-related defect does indeed exist, General Motors is now subject to a civil penalty as provided by the National Traffic and Motor Vehicle Safety Act of 1966, as amended, 15 U.S.C. § 1381 et seq. [hereinafter referred to as the Act].

## I. THE STATUTORY SCHEME.

The assessment of civil penalties under the Act is governed by three interrelated sections: 15 U.S.C. §§ 1397, 1398, and 1402. Section 1398 is the starting point in this Court's examination of the statutory direction in this area. That section provides:

> (a) Whoever violates any provision of section 1397 of this title, or any regulation issued thereunder,

---

1. The factual background and the legal basis for this Court's finding that a safety-related defect does exist in the WHEELS is set forth in this Court's Opinion of June 13, 1974, 377 F.Supp. 242, and will not be again extensively discussed herein.

shall be subject to a civil penalty of not to exceed $1,000 for each such violation. Such violation of a provision of section 1397 of this title, or regulations issued thereunder, shall constitute a separate violation with respect to each motor vehicle or item of motor vehicle equipment or with respect to each failure or refusal to allow or perform an act required thereby, except that the maximum civil penalty shall not exceed $400,000 for any related series of violations.

(b) Any such civil penalty may be compromised by the Secretary. In determining the amount of such penalty, or the amount agreed upon in compromise, the appropriateness of such penalty to the size of the business of the person charged and the gravity of the violation shall be considered. The amount of such penalty, when finally determined, or the amount agreed upon in compromise, may be deducted from any sums owing by the United States to the person charged. Pub.L. 89–563, Title I, § 109, Sept. 9, 1966, 80 Stat. 723.

■ Thus, under § 1398, a manufacturer is not liable for civil penalties unless it violates a provision of § 1397. General Motors has violated a section of § 1397 by failing to send the defect notifications, namely, § 1397(a)(4), which directs that no person shall "fail to furnish notification of any defect as required by section 1402 of this title." Section 1402(e) simply states that the Secretary may order the issuance of the defect notification upon his determination of a defect which relates to motor vehicle safety.[2] The Secretary made such a determination, General Motors failed to comply and the penalty provisions of § 1398 attached upon this Court's finding that the Secretary acted lawfully.

■ However, the Court's examination does not come to an end upon a finding of liability; the statute sets forth criteria in § 1398(b) to guide the Court in determining the amount of damages. The appropriateness of the penalty is directly related to the size of the business of the person charged and the gravity of the violation.

## II. "GOOD FAITH" AND "DUE CARE".

Preliminary to examining the factors relating to the gravity of the violation and the size of the business, it is necessary to address General Motors' argument that the Act should be construed as not to subject a manufacturer to civil penalties if it acted in "good faith" throughout the safety-defect notification proceedings.

■ General Motors' argument is bottomed upon its reading of §§

2. The precise language of section 1402(e) is as follows:

    (e) If through testing, inspection, investigation, or research carried out pursuant to this subchapter, or examination of reports pursuant to subsection (d) of this section, or otherwise, the Secretary determines that any motor vehicle or item of motor vehicle equipment;

    (1) does not comply with an applicable Federal motor vehicle safety standard prescribed pursuant to section 1392 of this title; or

    (2) contains a defect which relates to motor vehicle safety;

then he shall immediately notify the manufacturer of such motor vehicle or item of motor vehicle equipment of such defect or failure to comply. The notice shall contain the findings of the Secretary and shall include all information upon which the findings are based. The Secretary shall afford such manufacturer an opportunity to present his views and evidence in support thereof, to establish that there is no failure of compliance or that the alleged defect does not affect motor vehicle safety. If after such presentation by the manufacturer the Secretary determines that such vehicle or item of equipment does not comply with applicable Federal motor vehicle safety standards, or contains a defect which relates to motor vehicle safety, the Secretary shall direct the manufacturer to furnish the notification specified in subsection (c) of this section to the purchaser of such motor vehicle or item of motor vehicle equipment as provided in subsections (a) and (b) of this section.

1397(a)(3),[3] 1397(b)(2),[4] and 1402(a).[5] In the former two sections the statute utilizes the terminology "due care" and in the latter section, "good faith." But upon a reading of section 1397, it is clear that Congress was in no way providing a manufacturer using due care a defense to a civil penalty for failure to issue a defect notification. In fact, § 1397(a)(3) relates to failure to issue a certificate of conformity with motor vehicle safety standards as provided by § 1403 and is in no way related to defect notifications. Similarly, § 1397(b)(2) relates to conformity to motor vehicle safety standards, a far different matter from safety defect notifications.

■ General Motors' attempt to find a good faith defense to a violation of § 1397(a)(4) in § 1402(a) is equally without merit. Section 1402(a) admittedly does apply to defect notifications unlike those sections containing the due care wording. However, Section 1402(a) only applies to those situations where the manufacturer, on its own initiative, determines in "good faith" that a defect exists and on its own initiative sends out the notifications. Here, General Motors did not in any way act on its own in sending out these notices; to the contrary, it was necessary for the Secretary to order the notification pursuant to § 1402(e).

■ By no stretch of the statutory language can "good faith" be considered a defense to a violation of § 1397(a)(4). There is no reference in that section to a "good faith" defense and surely Congress would have explicitly so provided had they intended that such a defense be available to the manufacturer. Although a statute is passed as a whole, no court can read words from one section of a statute into another section without some indication that Congress intended such a result. There is no indication at all that Congress intended the terms "good faith" and "due care" to be read into § 1397(a)(4).

## III. THE PENALTY.

In applying Section 1398(a) to this case, it is clear that General Motors is liable for a penalty of $1,000 for

3. Subsection (a) of § 1397 provides:
(a) No person shall—
(1) manufacture for sale, sell, offer for sale, or introduce or deliver for introduction in interstate commerce, or import into the United States, any motor vehicle or item of motor vehicle equipment manufactured on or after the date any applicable Federal motor vehicle safety standard takes effect under this subchapter unless it is in conformity with such standard except as provided in subsection (b) of this section;
(2) fail or refuse access to or copying of records, or fail to make reports or provide information, or fail or refuse to permit entry or inspection, as required under section 1401 of this title;
(3) fail to issue a certificate required by section 1403 of this title, or issue a certificate to the effect that a motor vehicle or item of motor vehicle equipment conforms to all applicable Federal motor vehicle safety standards, if such person *in the exercise of due care* has reason to know that such certificate is false or misleading in a material respect;
(4) fail to furnish notification of any defect as required by section 1402 of this title. (Emphasis added.)

4. "(2) Paragraph (1) of subsection (a) of this section shall not apply to any person who establishes that he did not have reason to know *in the exercise of due care* that such vehicle or item of motor vehicle equipment is not in conformity with applicable Federal motor vehicle safety standards, or to any person who, prior to such first purchase, holds a certificate issued by the manufacturer or importer of such motor vehicle or motor vehicle equipment, to the effect that such vehicle or equipment conforms to all applicable Federal motor vehicle safety standards, unless such person knows that such vehicle or equipment does not so conform." (Emphasis added.)

5. "(a) Every manufacturer of motor vehicles or tires shall furnish notification of any defect in any motor vehicle or motor vehicle equipment produced by such manufacturer which he determines, *in good faith*, relates to motor vehicle safety, to the purchaser (where known to the manufacturer) of such motor vehicle or motor vehicle equipment, within a reasonable time after such manufacturer has discovered such defect. (Emphasis added.)

each defect notification it failed to send in contravention of the order of the Administrator of the National Highway Traffic Safety Administration [NHTSA]. It is conceded that if these failures to send are cumulated, General Motors would certainly have to pay more than the $400,000 maximum amount allowed in § 1398(a). Accordingly, this Court cannot assess more than $400,000 in penalties against General Motors. The remaining question is, however, whether upon consideration of the gravity of the offense and the size of the business, 15 U.S.C. § 1398(b), $400,000 is an appropriate penalty. For the following reasons, the Court finds certain factors tend to mitigate General Motors' refusal to comply with the defect-notification order.

First, as noted in the June 13th Opinion in this case, General Motors has sent a letter to all owners of trucks using the WHEEL [hereinafter Trucks], informing the owner of a serious safety problem if the Truck is overloaded.[6] At the further urging of NHTSA, a second letter was sent offering to replace the WHEELS on all Trucks equipped with campers or special bodies.[7] This Court has found that General Motors should have informed the Truck owners that there existed a safety-related defect as to all WHEELS. Nevertheless, General Motors did take this action which lessened the gravity of the violation. Some 62,229 WHEELS have been replaced pursuant to the October 7, 1969, letter. If this letter had not been sent, many more WHEELS may have failed causing injury.

■ The Court wants to make it abundantly clear that it does not condone in any manner the refusal of General Motors to send a further notification letter after the November 4, 1970, order of NHTSA. Moreover, it is apparent that General Motors knew there was some problem with these WHEELS

between 1965 and the time the 1969 letters were sent. For that reason, General Motors should be penalized pursuant to the Congressional direction of § 1398. But again, the gravity of the violation can only be determined by viewing all the surrounding circumstances. The sending of the 1969 letters is a factor which must be considered in determining an appropriate penalty.

■ A second factor which the Court feels must be considered is that this is a case of first impression and the law on this subject had not heretofore been interpreted by the courts during the course of the WHEELS controversy. In the future, after the Act is subject to further definition by the courts, General Motors or any other manufacturer may be subject to a higher degree of care in challenging an order under the Act. At this time, however, General Motors was not acting in blatant disregard of a well-defined area of the law. Each judge, in setting a penalty, may well determine that the law at issue was sufficiently clear on its face that no mitigation of the penalty is warranted. Within the circumstances of this case, however, it is appropriate to consider the novelty of the questions at issue in determining the appropriate amount to be assessed as a penalty.

■ On the other side of the coin, as noted *supra*, is the fact that for at least four years General Motors knew of some problems with the WHEELS but took no remedial actions whatsoever. Furthermore, it was not until this litigation was underway that the government learned, through discovery from General Motors, that there were 2,361 reported failures of the WHEELS. Taking these factors into account, as well as the well-known fact that General Motors is one of the largest corporations in the world, the Court finds that One Hundred Thousand Dollars ($100,000.00) is an appropriate penalty.

---

6. Letter of May 28, 1969, at 1. See Opinion of June 13, 1974, 377 F.Supp. at 244–246.

7. Letter of October 7, 1969.

## IV. DUE PROCESS.

■ It is the contention of General Motors that any award of civil penalties in this case would violate the corporation's constitutional right to due process. The foundation for this argument is that the government cannot assess heavy penalties against a party for challenging in court what the party considers an unlawful administrative order. General Motors maintains that if an automobile manufacturer is automatically liable for $400,000 in civil penalties every time it is necessary to challenge a possibly unlawful defect-notification order, then the manufacturer may find it more beneficial as a matter of economy to relent and send the notification notwithstanding the unlawful character of the order. Such a statutory scheme, it is argued, unconstitutionally inhibits judicial review, thus depriving the automobile manufacturer of due process.

There are several problems with General Motors' constitutional argument. First, no penalty can be assessed by this Court until after a *de novo* review of the validity of the notification order. It is the view of this Court that no penalty can be assessed until a court finds that General Motors' position was incorrect and the Secretary right in ordering the sending of the safety-defect notices. Secondly, the possible penalties under § 1398 are not automatic. As in this case, a court may find mitigating factors which militate against the assessment of the full $400,000 maximum penalty. Under the criteria set forth in § 1398(b) an automobile manufacturer may altogether escape assessment of any penalty depending upon the facts of each individual case. Finally, the Court, after examining the cases cited by General Motors,[8] finds that the crux of these cases is that one cannot impose such a burdensome penalty for challenging possibly unlawful governmental action that the challenging party would for all intents and purposes be robbed of the right to judicial review. That is not the situation in the case at bar. In contrast, it is hardly reasonable to argue that General Motors, one of the largest corporations in the world, would forego judicial review simply because there is a possibility that if it loses it may be assessed anywhere from one dollar to four-hundred thousand dollars. It follows, therefore, that the assessment of penalties under this statute will neither unduly inhibit General Motors from seeking judicial review nor in any other manner violate due process.

■ The policy of the Act with regard to civil penalties is clearly to discourage noncompliance with safety-defect orders except where the manufacturer is so certain of the correctness of its position that it is willing to risk civil penalties if it loses in court. Such a policy is clearly in the public interest in that it promotes prompt and uniform notification of safety-hazards in all but the few cases where the manufacturer is sure its position in not sending the notifications is valid. Congress in taking this course to assure the safety of highway users was well within constitutional bounds as long as the NHTSA order is subject to judicial review.

■ As noted by Justice Cardozo in Life & Casualty Insurance Co. of Tennessee v. McCray, 291 U.S. 566, 574, 54 S.Ct. 482, 78 L.Ed. 987 (1934), penalties can be assessed to carry out a valid public interest without violating constitutional rights of due process if that penalty does not present an insurmountable barrier to judicial review:

> "Penalty" is a term of varying and uncertain meaning. There are penalties recoverable in vindication of the public justice of the state. There are

8. Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961); Wadley Southern Railway Company v. Georgia, 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405 (1915);

Oklahoma Operating Co. v. Love, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed 596 (1919); Chicago & Northwestern Railway Co. v. Railroad & Warehouse Comm'n, 280 F. 387 (C.D.Minn.1922).

other penalties designed as reparation to sufferers from wrongs. Huntington v. Attrill, 146 U.S. 657, 668, [13 S.Ct. 224, 36 L.Ed. 1123]; Brady v. Daly, 175 U.S. 148, 154, 157, [20 S.Ct. 62, 44 L.Ed. 109]; St. Louis, I. M. & S. Ry. Co. v. Williams, 251 U.S. 63, 66, [40 S.Ct. 71, 64 L.Ed. 139]; Loucks v. Standard Oil Co., 224 N.Y. 99, 103, 120 N.E. 198. One who refuses to pay when the law requires that he shall, acts at his peril, in the sense that he must be held to the acceptance of any lawful consequences attached to the refusal. It is no answer in such circumstances that he has acted in good faith. "The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." Nash v. United States, 229 U.S. 373, 377, [33 S.Ct. 780, 781, 57 L.Ed. 1232]. Reparation may still be due, for all his good intentions, yet reparation within bounds. It is all "a question of more or less." Sexton v. Kessler & Co., 225 U.S. 90, 98, [32 S.Ct. 657, 659, 56 L. Ed. 995]. The price of error may be so heavy as to erect an unfair barrier against the endeavor of an honest litigant to obtain the judgment of a court. In that event, the Constitution intervenes and keeps the court room open. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714]; Wadley Southern Ry. Co. v. Georgia, 235 U. S. 651, 661, 662, 35 S.Ct. 214, 59 L.Ed. 405. On the other hand, the penalty may be no more than the fair price of the adventure. St. Louis, I. M. & S. Ry. Co. v. Williams, *supra*, p. 66, [of 251 U.S., 40 S.Ct. 71, 64 L.Ed. 139]. In that event, the litigant must pay for his experience, like others who have tried and lost. (Footnote omitted.)

Since there is no insurmountable barrier to review in this case, $100,000.00, in the words of Justice Cardozo, is the fair price General Motors must pay for this adventure.

Accordingly, it is by the Court this 30th day of July, 1974,

Ordered that defendant pay to plaintiff as civil penalties pursuant to 15 U. S.C. § 1398, One Hundred Thousand Dollars ($100,000.00), together with the costs of this action; and it is further

Ordered that the payment of these penalties be, and it hereby is, stayed until decision by the Court of Appeals as to the correctness of this Court's ruling of June 13, 1974.