UNITED STATES of America, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

Civ. A. No. 83–2220.

United States District Court, District of Columbia.

Dec. 1, 1983.

See also 99 F.R.D. 610.

Lawrence A.G. Maloney, Dept. of Justice, Washington, D.C., for plaintiff.

Theodore Souris, Bodman, Longley & Dahling, Detroit, Mich., Thomas A. Gottschalk, Kirkland & Ellis, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

The United States brought this action on August 3, 1983, under the National Traffic and Motor Vehicle Safety Act of 1966, as amended, 15 U.S.C. § 1381 *et seq.*, (the "Act"), alleging that defendant General Motors Corporation ("GM"), knowing 1.1 million of its 1980 "X-cars" to possess defective braking systems which caused premature rear wheel lock-up,[1] failed to notify the Secretary of Transportation and its customers of these defects and failed to remedy them adequately as the Act requires. The United States seeks declaratory and injunctive relief, and an assessment of monetary civil penalties against GM. The case is now before the Court on defendant's motion of September 14, 1983, to dismiss Counts I through IV (of a total of six counts set forth) of the complaint pursuant to Fed.R.Civ.P. 12(b)(6).[2] For the reasons set forth below the motion will be denied.

The essence of GM's principal argument, which it expresses in both absolute jurisdictional and discretionary deference to administrative process terms, derives from the failure of National Highway Traffic Safety Administration ("NHTSA") to complete the investigation of reports of the defects which it began informally in the spring of 1980, conducted largely *ex parte* while promising GM it would be given an opportunity to be heard, and then apparently abandoned in favor of notifying the Attorney General pursuant to 15 U.S.C. § 1401(a)(1) of the evidence it then had indicating GM's noncompliance with the Act for his "appropriate action." In GM's conception of the Act, NHTSA has been cast as the exclusive (or at least the primary) arbiter of the hazards presented by motor vehicle equipment. If the agency determines, in accordance with its own procedures (which must include an opportunity for the manufacturer to contest it), that a manufacturer's motor vehicles do not comply with Federal safety standards or contain defects which relate to motor vehicle safety, then the Secretary of Transportation may order the manufacturer to take remedial action. 15 U.S.C. § 1412. Compliance with the Secretary's order, according to GM, may then be judicially enforced if the manufacturer refuses to do as ordered, 15 U.S.C. § 1415, but until an order has issued and been disobeyed, it says, no judicially cognizable claim is presented. In support of its argument GM quotes Judge Leventhal's dictum in *United States v. General Motors*, 518 F.2d 420 (D.C.Cir. 1975) ("Wheels"), to the effect that "[j]udicial involvement in the defect notification process takes place only in cases where the Secretary, after affording the manufacturer an opportunity to present its views, reaffirms his defect determination by directing the manufacturer to issue notices and the manufacturer continues to challenge the finding by refusing to comply." *Id.* at 426.[3]

■ Although all reported cases under the Act appear to have arisen upon completed agency proceedings,[4] the govern-

---

1. The "X-cars" involved are the Chevrolet Citation, Pontiac Phoenix, Buick Skylark, and Oldsmobile Omega manufactured in the 1980 model year beginning approximately January 1, 1979 and ending approximately August 1, 1980.

2. Counts I and II allege failures to give notice of and to remedy the alleged defects in the X-cars' braking systems pre- and post-production, respectively; Counts III and IV allege inadequate "recalls" of 47,000 and 240,000 X-cars by GM in July 1981, and February 1983. Counts V and VI, charging GM with failure to cooperate with NHTSA's investigation and to comply with certain recall regulations, were answered by GM on the merits on September 7, 1983.

3. The "Wheels" case reversed summary judgment enforcing an agency order but did not purport to decide whether judicial proceedings could be had to enforce the Act in advance of an agency order.

4. *United States v. Ford Motor Co.*, 574 F.2d 534 (D.C.Cir.1978); *United States v. Ford Motor Co.*, 453 F.Supp. 1240 (D.D.C.1978); *United States v. General Motors*, 417 F.Supp. 933 (D.D.C.1976), *affirmed in part*, 565 F.2d 754 (D.C.Cir.1977); *United States v. General Motors*, 377 F.Supp. 242 (D.D.C.1974), *supplemented by*, 385 F.Supp. 598 (D.D.C.1974), *reversed* 518 F.2d 420 (D.C.Cir. 1975) ("Wheels"); *United States v. General Motors*, 65 F.R.D. 115 (D.D.C.1974), *reversed*, 561 F.2d 923 (D.C.Cir.1977), *cert. denied*, 434 U.S.

ment contends that the Act is designed to admit of enforcement *dehors* the administrative process. It says, and the Court agrees, that 15 U.S.C. § 1411 imposes an independent duty upon manufacturers of motor vehicles to give notification of and to remedy known safety-related defects. The duty exists with or without a Secretary's order to that effect, *see* 15 U.S.C. § 1414(a)(1), and a manufacturer who fails in it is in violation of the Act. 15 U.S.C. § 1397(a)(1)(D). By 15 U.S.C. § 1399(a), U.S. district courts are given jurisdiction "to restrain violations" of the Act, not merely to enforce the Secretary's orders. And the Secretary is required by 15 U.S.C. § 1401(a)(1) to furnish the Attorney General with "any information obtained indicating noncompliance" with the Act, as well as with any rules, regulations, or orders issued thereunder, for "appropriate action" without conditions as to time or the state of administrative affairs.

■ Despite a somewhat ambiguous legislative history, considering the statutorily-declared purpose of the Act as being "to reduce traffic accidents and deaths and injuries to persons" resulting therefrom, 15 U.S.C. § 1381, its express direction that the Attorney General be made privy to evidence of its violation, and its failure to provide, in so many words, that a NHTSA investigation and a Secretary's order are necessary antecedents of actions to compel its observance, (as Congress could surely have done had it so intended) the Court is unable to ascribe to Congress an intent to require the nation's chief law enforcement officer to await the end of the administrative process before going to court on his own to redress a violation of the Act which he may perceive to present an imminent danger to the public.[5]

Nor is there any reason for this Court to refrain from adjudication now as a matter of discretion. There are no ongoing agency proceedings at the moment to be interfered with; NHTSA has apparently brought its investigation to a *de facto* end. The agency's experience and expertise will be made available to the Court through evidence presented by its technical personnel and the advice of the NHTSA lawyers who have joined of counsel with the Department of Justice on the complaint. The issues to be tried will have to be determined *de novo* here, whether or not there has been formal agency action, thus making an administrative record superfluous. And GM will be assured the full opportunity to present the case it says it was denied by NHTSA when the agency's investigation was aborted.

■ GM also contends that Counts I and II are defective, because they purport to charge it with breach of a duty which the statute does not impose, namely, to make a "good faith" determination of the existence of the safety-related defect. The statute, it says, requires only notice and remedy, and those only after a manufacturer has, in fact, made such a determination. *See* 15 U.S.C. §§ 1411, 1397(a)(1)(D). The government responds that Counts I and II allege that GM *did* make such a determination and *did not* notify or remedy, and that those allegations alone are sufficient to save them from dismissal. *See* Fed.R. Civ.P. 8(e)(2); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). It also says that it has alleged actual knowledge on the part of GM of a defect having potential for causing loss of vehicle control which is, thus, as a matter of law, safety-related, *United States v. General Motors*, 561 F.2d 923 (D.C.Cir. 1977), ("Pitman Arms") *cert. denied*, 434

1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978) ("Pitman Arms"); *General Motors v. Volpe*, 321 F.Supp. 1112 (D.Del.1970), *affirmed as modified*, 457 F.2d 922 (3rd Cir.1972) (agency order and GM sought pre-enforcement judicial review).

**5.** GM has called attention to no comparable regulatory scheme, and the Court is aware of none, in which similar forbearance is required.

*Compare, e.g.,* the construction given the Federal Aviation Act, 49 U.S.C. §§ 1482(b), (c), 1487(a) in *CAB v. Aeromatic Travel Corp.*, 489 F.2d 251, 253–54 (2d Cir.1974), and the Federal Trade Commission Act, 15 U.S.C. § 53(b), in *FTC v. Singer*, 534 F.Supp. 24, 26–27 (N.D.Cal. 1981).

U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978), making any "determination" by GM unnecessary. If, however, as the Court has previously held, 15 U.S.C. § 1411 does impose a duty on a manufacturer to notify of and remedy safety-related defects even in the absence of an agency order to do so, it would make no sense to construe it to allow a manufacturer to evade the duty by the expedient of declining, however innocently, to reach its own conclusion as to the relationship between a defect in its vehicles and the safety of the travelling public. The Court concludes, therefore, that Counts I and II of the complaint allege actionable violations of the Act in all three respects.

For the foregoing reasons, it is, this 1st day of December, 1983,

ORDERED, that the motion of defendant General Motors to dismiss Counts I–IV of the complaint is denied.