**BOURNE CO., et al., Plaintiffs,**

v.

**Verlin SPEEKS, Defendant.**

**No. Civ. 3–86–565.**

United States District Court,
E.D. Tennessee, N.D.

Aug. 31, 1987.

Richard L. Colbert, Nashville, Tenn., for plaintiffs.

Richard L. Hollow, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

JARVIS, District Judge.

This is a suit for copyright infringement concerning two musical compositions. It comes before the Court on the plaintiffs' motion for summary judgment.

In order to establish a *prima facie* case of infringement, the plaintiffs must present evidence of five elements: (1) the originality and authorship of the compositions involved; (2) compliance with the formalities required to secure a copyright under Title 17, *United States Code;* (3) plaintiffs' ownership of the copyrights of the relevant compositions; (4) defendant's public performance of the compositions; and (5) defendant's failure to obtain permission from the plaintiffs or their representatives for such performance. *See Van Halen Music v. Palmer,* 626 F.Supp. 1163, 1164–65 (W.D.Ark.1986); *Broadcast Music, Inc. v. Fox Amusement Company,* 551 F.Supp. 104, 107 (N.D.Ill.1982). The defendant does not challenge the establishment of any of the foregoing five elements. Therefore, for the purpose of this motion for summary judgment, the court will take these five elements as admitted by the defendant.

At all times pertinent hereto, the defendant was the owner and operator of the

Country Music Theatre located in Clinton, Tennessee. The defendant produced weekly country music shows at the said theatre. The shows were largely comprised of amateur performances. There was an admissions charge for such performances. The defendant was contacted on several occasions over a three-year period by representatives of the American Society of Composers, Authors and Publishers [ASCAP] concerning the unauthorized performance of copyrighted musical compositions during the shows at the Country Music Theatre. However, the defendant failed or refused to purchase the appropriate license to permit the performance of material covered by ASCAP copyrights. On October 19, 1985, responding to audience requests, different performers sang in their entirety the songs "San Antonio Rose" and "Highway 40 Blues". The plaintiffs own the copyrights to these musical compositions and did not in any way authorize the said performances of their compositions.

The defendant argues that under the circumstances, the use of the songs in question did not constitute an infringement of copyright under the exemption set forth in Title 17, U.S.C. § 110(4). Section 110(4) provides that the following is not an infringement of copyright:

Performance of a non-dramatic literary or musical work otherwise than in a transmission to the public, without any purpose of direct or indirect commercial advantage and without payment of any fee or other compensation for the performance to any of its performers, promoters, or organizers, if—

(A) There is no direct or indirect admission charge; or

(B) The proceeds, after deducting the reasonable cost of producing the performance, are used exclusively for educational, religious, or charitable purposes and not for private financial gain, ...

Defendant's theory is that the use of the material in question falls within this exemption because "the Defendant's Theatre operated without purpose of commercial advantage and its limited proceeds served to further charitable aims". [Court File # 13]. In support of these allegations, the defendant has filed his affidavit that "the Theatre has never been a commercial success", that the Country Music Theatre has never been a financially lucrative venture, and that "the Theatre has been used as a refuge for the needy and homeless on a number of occasions as well as a central location for dispensing charity during the holidays." [Court File # 14]. Whether the use of copyrighted material is in fact a financial success is not the deciding factor in determining the exemption under § 110(4). The language of § 110(4) requires that to be exempt the performance must be "without any purpose of direct or indirect commercial advantage." Clearly, the Country Music Theatre was operated in the hope of realizing a profit. As Justice Oliver Wendall Holmes observed in deciding that the performance of musical compositions in a restaurant for the incidental entertainment of the diners constituted a copyright infringement, "[w]hether it pays or not the purpose of employing it is profit and that is enough." *Herbert v. Shanley Co.*, 242 U.S. 591, 595, 37 S.Ct. 232, 233, 61 L.Ed. 511 (1917). There was an admission charge to the Country Music Theatre. [Defendant's deposition, p. 11]. The band members were paid a nominal fee. [Defendant's deposition, p. 17]. The occasional charitable use of the Country Music Theatre does not meet the mandate of § 110(4)(B) that the proceeds are to be used exclusively for educational, religious, or charitable purposes and not for private financial gain. For all of these reasons, the court finds that the defendant is not entitled to the exemption claimed under § 110(4).

The defendant also argues that the use of the copyrighted material in question comes within the fair use doctrine and does not constitute a copyright infringement. The fair use doctrine has been codified in Title 17, U.S.C. § 107. That section provides:

Notwithstanding the provisions of 106, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for pur-

780

poses such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use, the factors to be considered shall include—

(1) The purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes;

(2) The nature of the copyrighted work;

(3) The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) The effect of the use upon the potential market for or value of the copyrighted work.

"Fair use has been defined as: A privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner by the copyright." *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2nd Cir.1966), *cert. denied,* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967), *quoting* Ball, *The Law of Copyright and Literary Property*, 260 (1944). "The doctrine offers a means of balancing the exclusive right of a copyright holder with the public's interest in dissemination of information affecting areas of universal concern, such as art, science, history, or industry." *Meeropol v. Nizer*, 560 F.2d 1061, 1068 (2nd Cir.1977). The court finds that the use of the copyrighted material in question was of a commercial nature rather than for non-profit educational purposes or any purpose of universal concern. Further, it is undisputed that the musical compositions in question were performed in their entirety. Generally, the fair use doctrine does not apply where copyrighted material is used as a whole. *See Meeropol v. Nizer, supra,* and *Rosemont Enterprises, Inc. v. Random House, Inc., supra.* The defendant is, therefore, not entitled to the benefit of the fair use doctrine.

Having determined that the two defenses raised by defendant are not applicable, the court finds that there is no issue of genuine fact. Plaintiffs are entitled to a judgment as a matter of law. Plaintiffs' motion for summary judgment is GRANTED.

■ Regarding the question of damages, the plaintiffs have not shown that the value of the musical compositions in question was diminished by the defendant's unauthorized use. However, the plaintiffs have elected to recover statutory damages under Title 17, U.S.C. § 504, for all infringements involved in this action instead of actual damages and the profits of the infringer. Section 504(c)(1) provides for an award of statutory damages of not less than $250 or more than $10,000 as the court considers just for all infringements involved in the action with respect to any one work. If the court finds that the infringement was committed willfully, the court in its discretion may increase the award of damages to a sum of not more than $50,000. 17 U.S.C. § 504(c)(2). "Statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984). It is not essential to a recovery of the statutory damages that the giving of an infringing performance shall be a willful violation of the copyright. *Brady v. Daly*, 83 F. 1007, 1012 (2nd Cir.1897), *aff'd* 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109. Plaintiffs have requested statutory damages in the amount of $3,000 per infringement. "The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris,* 734 F.2d at 1335. The defendant objects to the requested damages as exorbitant and excessive under the circumstances.

■ Plaintiffs further seek injunctive relief. The defendant has made affidavit that the Country Music Theatre is no longer in operation. This may render the question of injunctive relief moot. Nonetheless, the court finds that the plaintiffs are entitled to injunctive relief. The defendant is

therefore permanently restrained and enjoined from the unauthorized performance of musical compositions the copyrights of which are held by the plaintiffs and from aiding and abetting in the performance of such musical compositions.

■ Plaintiffs also seek attorney fees under the authority of Title 17, U.S.C. § 505, which provides that "the court may also award a reasonable attorneys' fee to the prevailing party as part of the costs." The court in *Boz Scaggs Music v. KND Corporation,* 491 F.Supp. 908 (D.Conn. 1980), found that equity dictated that the defendants be required to pay the plaintiffs an allowance for attorneys' fees where liability was unquestionable on both the law and the facts and where the defendants were not innocent infringers in that they repeatedly rebuffed offers to resolve the dispute prior to the commencement of litigation, their defense efforts were sparse and they made no attempt whatsoever to avoid the infringement although they were well aware of the law's requirements. It is undisputed that the defendant was contacted on numerous occasions by ASCAP representatives concerning a license authorizing the performance of the plaintiffs' works and, as a music publisher, the defendant understood the licensing requirements. Nevertheless, the only steps which the defendant took to avoid infringement was to request a list of songs covered by ASCAP copyrights. The licensor of musical compositions on behalf of copyright owners has no duty to provide a list of copyrighted songs assigned to it. *Broadcast Music, Inc. v. Niro's Palace, Inc.,* 619 F.Supp. 958, 962 (N.D.Ill.1985). The court finds that this is an appropriate case for an award of attorney fees. The plaintiffs' attorney has submitted an itemized schedule of hours and legal services performed. The defendant objects to the requested attorney's fees as unreasonable.

In view of the defendant's objection to the requested damages and attorney's fees, the court finds it appropriate to set this matter for hearing upon the amount of damages and attorney fees.

Order accordingly.

## ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that plaintiffs' motion for summary judgment is GRANTED. The defendant is permanently restrained and enjoined from the unauthorized performance of musical compositions the copyrights of which are held by the plaintiffs and from aiding and abetting in the performance of such musical compositions. It is ORDERED that this matter be set for a hearing to determine the amount of damages and attorney fees.